598 F.2d 1303
 RAMADA INNS, INC., a Corporation of the State of Delaware,
J. O. Kislak Realty Corp., Plaintiff-Intervenor,
v.
ROSEMOUNT MEMORIAL PARK ASSOCIATION, a Cemetery Association
of the State of New Jersey, and Gross, Demetrakis & Sinisi,
Esqs., a law partnership of the State of New Jersey,
successors to Gross, Demetrakis & Donohue, Esqs., as Escrow
Agent, William F. Hyland, Attorney General of the State of
New Jersey, and New Jersey Cemetery Board, Demetrakis & Dollinger
Ramada Inns, Inc., a Corporation of the State of Delaware,
Rosemount Memorial Park Association, Gross, Demetrakis &
Sinisi, Esqs., a law partnership of the State of New Jersey,
successors to Gross, Demetrakis & Donohue, Esqs., as Escrow
Agent, Defendants-Intervenor.
Appeal of RAMADA INNS, INC., Plaintiff.
 No. 78-2165.
 United States Court of Appeals,
Third Circuit.
 Argued March 21, 1979.
Decided May 16, 1979.
 
 David R. Simon (argued), Simon & Allen, Newark, N. J., for appellant; Richard B. Gelfond, Newark, N. J., on brief.
 John J. Degnan, Atty. Gen. of New Jersey, Trenton, N. J., for appellees, Attorney General of New Jersey and New Jersey Cemetery Board; Erminie L. Conley, Asst. Atty. Gen., Trenton, N. J., of counsel; Mark S. Rattner (argued) Deputy Atty. Gen., Trenton, N. J., on brief.
 Gladstone, Hart & Rathe, Hackensack, N. J., for appellee, Rosemount Memorial Park Association; Marvin H. Gladstone (argued), Milton Max Manshel, Jr. (argued), Hackensack, N. J., on brief.
 Before SEITZ, Chief Judge, and ALDISERT and ROSENN, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 This diversity case involving a contract dispute over a proposed sale of land by a private cemetery to a hotel chain requires us to decide if the state of New Jersey is a real party in interest to this controversy. Section 8A:3-21 of the New Jersey Statutes makes the Attorney General of New Jersey and the state cemetery board necessary and indispensable parties to any litigation involving a cemetery within the state. The district court held that because of this statute New Jersey was a real party in interest and therefore the Eleventh Amendment barred suit in federal court. It dismissed the complaint and plaintiff has appealed. Because we decide that § 8A:3-21 does not make New Jersey a real party in interest to every action brought against a private cemetery located within its borders, we reverse.
 
 I.
 
 2
 Ramada Inns, a Delaware corporation, instituted this contract action against Rosemount Memorial Park Association, a nonsectarian cemetery located in Newark and Elizabeth, New Jersey. Jurisdiction was based on diversity of citizenship. The relief sought was cancellation of a contract to purchase a tract of vacant land suitable for the construction of a motor inn, and return of $75,000 which Ramada had deposited with Rosemount. Rosemount counterclaimed for specific performance of the contract or, alternatively, for damages.
 
 
 3
 By stipulation of the parties the Attorney General of New Jersey and the New Jersey Cemetery Board were joined as parties defendant pursuant to N.J.Stat.Ann. § 8A:3-21, which provides: "The Attorney General and the cemetery board shall be necessary and indispensable parties to any litigation involving or pertaining to a cemetery company."[1]
 
 
 4
 Following a mistrial, Rosemount moved to dismiss the action. In granting the motion, the district court noted that the state had no direct interest in the outcome of the litigation, but concluded that it was a real party in interest on the basis of New Jersey's statutory scheme for the regulation of cemeteries. The district court found particularly persuasive the requirements embodied in N.J.Stat.Ann. § 8A:4-1 Et seq., that each cemetery create an irrevocable trust fund for the permanent maintenance and preservation of the cemetery and that all trust funds be supervised by the state cemetery board. Ramada has appealed.
 
 II.
 
 5
 Ramada argues that this is a contract dispute between two private parties and that the state cannot be considered a real party in interest because the attorney general and the cemetery board are only nominal parties to this action. Appellee urges us to accept the district court's reasoning that the inescapable effect of § 8A:3-21 is to make the state of New Jersey a real party in interest, and that Ramada's claim should therefore be barred by the Eleventh Amendment.[2]
 
 
 6
 Before reaching the constitutional implication of this question, however, we must decide whether the district court properly had subject matter jurisdiction over this claim based on diversity of citizenship. Section 1332(a) of Title 28, United States Code, sets out the diversity jurisdiction of the federal courts.
 
 
 7
 (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between
 
 
 8
 (1) citizens of different States;
 
 
 9
 (2) citizens of a State, and foreign states or citizens or subjects thereof; and(3) citizens of different States and in which foreign states or citizens or subjects thereof are additional parties.
 
 
 10
 Diversity jurisdiction, like all federal jurisdiction, is limited in nature, and it is well settled that a state is not a citizen within the meaning of the diversity statute. Moor v. Alameda, 411 U.S. 693, 717, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); Minnesota v. Northern Securities Co., 194 U.S. 48, 63, 24 S.Ct. 598, 48 L.Ed. 870 (1904). An action brought by a citizen of one state against another state is not cognizable under § 1332 and may only be brought if the proceeding "arises under the Constitution, laws or treaties of the United States." Postal Telegraph Cable Co. v. Alabama, 155 U.S. 482, 487, 15 S.Ct. 192, 194, 39 L.Ed. 231 (1894); See also State Highway Commission v. Utah Construction Co., 278 U.S. 194, 200, 49 S.Ct. 104, 73 L.Ed. 262 (1929). Thus, if we were to conclude for purposes of this appeal that the state of New Jersey is a real party in interest, the district court would be without power to entertain this action under the diversity statute. For the reasons set forth below, however, we determine that the Attorney General of New Jersey and the cemetery board are only nominal parties to this dispute, so that New Jersey is not a real party in interest. Accordingly, Ramada's claim against Rosemount is cognizable under § 1332.
 
 III.
 
 11
 Whether a particular case involves a question of diversity jurisdiction,[3] or Eleventh Amendment prohibition,[4] the initial inquiry is the same: is the state a real party in interest to the litigation? That a state, a state agency, or its officers may have been named as parties defendant in an action is not dispositive of this question because such a determination can only be derived from the "essential nature and effect of the proceeding." Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). See In re Ayers, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216 (1887); Pennsylvania Turnpike Commission v. Welsh, 188 F.2d 447, 450 (3d Cir. 1951). Conversely, even though the state, a state agency, or its officers have Not been named as parties, the state may nonetheless be the real party in interest against which relief is sought. Quern v. Jordan,--- U.S. ----, ---- n. 17, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); In re Ayers, supra, at 506, 8 S.Ct. 164. Because the question whether a state is the real party in interest will turn on factors widely variant from case to case, See Pennsylvania Turnpike Commission, supra, at 450, an examination of the cases which have considered the question will aid our determination.
 
 
 12
 In actions seeking recovery of money damages which will be paid from public funds in a state treasury, the state has been found to be a real party in interest. Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Quern v. Jordan, supra. Likewise, in proceedings for equitable relief where, in effect, granting the relief will require some affirmative act by the state, the state has been considered the real party in interest. Hagood v. Southern, 117 U.S. 52, 66-67, 6 S.Ct. 608, 29 L.Ed. 805 (1887); In re Ayers, supra, at 502-03, 8 S.Ct. 164. In a suit against a state agency or its officers, an assessment must be made as to the degree of autonomy which the agency exercises over its own functions. Where no claim is made, or could successfully be made, that the agency or officers are personally liable, then they are held to be acting in their capacity as the "alter ego" of the state and the state is a real party in interest. See, e. g., State Highway Commission v. Utah Co., 278 U.S. 194, 199, 49 S.Ct. 104, 73 L.Ed. 262 (1929). Another relevant factor is the stake, if any, which the state has in the outcome of the litigation beyond a general desire that its laws be enforced. If a federal judgment will have no effect other than to implicate the state's general "governmental interest in the welfare of all its citizens .. . and in securing compliance with all its laws," Missouri, Kansas & Texas Ry. Co. v. Missouri R. R. & Warehouse Commissioners, 183 U.S. 53, 60, 22 S.Ct. 18, 21, 46 L.Ed. 78 (1901), then the state is not a real party in interest.
 
 IV.
 
 13
 Applying this analysis, we note that no relief is sought from the state either in Ramada's complaint or Rosemount's counterclaim. No possible outcome of this suit could result in an award of damages which will be paid out of the state treasury or in equitable relief which must be satisfied by the state. Ramada requests only that the money which it deposited with appellee be returned, and Rosemount asks that Ramada be ordered to honor the contract. Regardless of whose request prevails, the state will not be affected in any substantial way. Furthermore, neither the attorney general nor the cemetery board has raised the Eleventh Amendment defense. In fact, "the State (has) elected not to take an adversarial position as regards the application of the Eleventh Amendment to this case," State's Brief at 8, and the state has remained completely neutral concerning the outcome of the suit. All of this, we think, indicates that the state is not a real party in interest to this litigation.
 
 
 14
 The district court found that New Jersey did have a pecuniary interest in this litigation based on the requirements of N.J.Stat.Ann. §§ 8A:4-2 and 4-15.[5] These sections direct every cemetery company located in New Jersey to create a trust fund for the maintenance and preservation of the cemetery under the supervision of the state cemetery board. The court reasoned that the state had a pecuniary interest in seeing that the funds were adequately financed. We believe, however, that any interest which these statutes may arguably create in the state is merely contingent and too speculative to be implicated by a federal judgment in this case. New Jersey has only the Potential interest of insuring that Rosemount make the mandatory contribution to its trust fund should the sale to Ramada ever be consummated. Such a possibility is not sufficient to make the state the real party in interest in this controversy for purposes of the Eleventh Amendment.[6]
 
 
 15
 The district court also reasoned that because N.J.Stat.Ann. § 8A:4-15 requires board approval before a cemetery may sell land, definite action on the part of the board to approve or disapprove the proposed sale would have to be ordered if Rosemount's counterclaim for specific performance were to be granted. The district court's characterization misconceives the present posture of the controversy. Neither the state nor the cemetery board is a party to the contract. The board's approval or disapproval of the sale is separate and completely distinct from the contract dispute between Rosemount and Ramada. Rosemount has counterclaimed for certain relief which will be determined by a proper interpretation of its contract with Ramada. Whether specific performance is ordered might well depend on whether or not the board has approved the sale, but such approval is no part of the relief sought by the parties to this contract. The district court cannot properly order board approval because the board is not a party to the contract which is the subject matter of this case.
 
 V.
 
 16
 Although New Jersey has seen fit to regulate the affairs of cemeteries within its borders, it does not follow that this regulation compels, or even warrants, a conclusion that New Jersey is a real party in interest to this contract dispute involving one of its citizens which happens to be a cemetery association. As the Court said in Missouri, Kansas & Texas Ry. Co., supra, 183 U.S. at 60, 22 S.Ct. at 21:
 
 
 17
 It is true that the state has a governmental interest in the welfare of all of its citizens, in compelling obedience to the legal orders of all its officials, and in securing compliance with all its laws. But such general governmental interest is not that which makes the State, as an organized political community, a party in interest in the litigation, for if that were so the State would be a party in interest in all litigation; because the purpose of all litigation is to preserve and enforce rights and secure compliance with the law of the State, either statute or common.
 
 
 18
 We hold that the Eleventh Amendment does not bar Ramada's claim against Rosemount because the state of New Jersey is not a real party in interest to this litigation. Accordingly, we will reverse the judgment of the district court and remand for further proceedings.
 
 
 19
 SEITZ, Chief Judge, concurring.
 
 
 20
 I concur in the result reached by the majority because I believe language used by the Supreme Court in prior cases seems to require that the real party in interest inquiry followed here is to be applied to both the eleventh amendment and diversity issues. Were I free to decide the latter issue on a clean slate, however, I would hold that this suit, in which agencies of the State of New Jersey have been named as necessary and indispensable parties in accordance with state law and in the outcome of which the state has considerable interests, is not within the grant of diversity jurisdiction.
 
 
 21
 As an initial matter, I observe that although the Supreme Court has framed both the question whether a suit is barred by sovereign immunity and the question whether a state's presence in a suit destroys diversity in terms of whether the state is a real party in interest, the two inquiries have been held to be, at least in some respects, distinct. See Krisel v. Duran, 386 F.2d 179, 181 (2d Cir. 1967) ("The issue of whether or not the instrumentality of a state is a citizen of that state for diversity purposes is separate and distinct from the issue of sovereign immunity."). That there should be a distinction is not surprising given that the purpose of the eleventh amendment is to bar those actions from federal court that seek to impose a "retroactive award which requires the payment of funds from the state treasury," Quern v. Jordan, --- U.S. ----, ----, 99 S.Ct. 1139, 1148, 59 L.Ed.2d 358 (1979), while it has been held that the grant of diversity jurisdiction does not extend to actions in which a state is a party in interest simply because "a state cannot in the nature of things, be a citizen of any state," Stone v. South Carolina, 117 U.S. 430, 433, 6 S.Ct. 799, 800, 29 L.Ed. 962 (1886).
 
 
 22
 It is surprising, however, given the divergent principles underlying the two inquiries, that the only distinction between them to have received judicial recognition to date is that the state may waive its eleventh amendment sovereign immunity but is unable to waive the lack of subject matter jurisdiction if diversity does not exist in a given suit. See State Highway Commission of Wyoming v. Utah Construction Co., 278 U.S. 194, 199-200, 49 S.Ct. 104, 73 L.Ed. 262 (1929); Harris v. Pennsylvania Turnpike Commission, 410 F.2d 1332, 1333 n.1 (3d Cir. 1969). Thus, even though the New Jersey Attorney General and the cemetery board did not join in asserting the eleventh amendment defense, and even though they have adopted, throughout the course of this litigation, a neutral position with respect to the impact of this action on New Jersey's sovereign immunity, those facts are immaterial to the question whether the district court has subject matter jurisdiction of this suit.
 
 
 23
 I begin my examination of the latter question with the observation that relevant state law should be accorded some deference, particularly in a diversity action where the only federal interest is in providing a neutral forum. It is true, of course, that whether the State of New Jersey is a party to this action, such that diversity of citizenship is unavailable as a basis for subject matter jurisdiction, is a question of federal law. But, in analogous situations, we have found state law to be relevant, and at times dispositive, on issues concerning the role of the state and state agencies in federal litigation. See Skehan v. Board of Trustees of Bloomsburg State College, 538 F.2d 53, 62 (3d Cir.) (en banc), Cert. denied, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976). In the typical case in which the eleventh amendment is raised as a defense, such as Skehan, the plaintiff is asserting federal constitutional rights. In this action, where Ramada Inns' substantive claim is based on state contract law, I see no reason for not according an equivalent or greater degree of deference to applicable state law.
 
 
 24
 I next turn to the question whether the State of New Jersey is a party to this action, and, if so, whether that fact precludes Ramada Inns from bringing this action in federal court on the basis of diversity of citizenship. The New Jersey Cemetery Act clearly provides that "(t)he Attorney General and the cemetery board shall be necessary and indispensable parties to any litigation involving or pertaining to a cemetery company." N.J.Stat.Ann. § 8A:3-21. Moreover, the parties to this lawsuit, including a Deputy Attorney General, stipulated to the addition of the Attorney General and the cemetery board as parties-defendant, stating that they "are necessary and indispensable parties to this action involving or pertaining to a cemetery company pursuant to N.J.S.A. 8A:3-21." See Appendix at 47.
 
 
 25
 Even prior to the passage of the present version of the Cemetery Act in 1971, New Jersey courts had recognized that a cemetery company "functions as a Quasi -public charitable trust." Frank v. Clover Leaf Park Cemetery Association, 29 N.J. 193, 148 A.2d 488, 496 (1959). For that reason, New Jersey courts have long held that "(w)henever the charge is made that the managers or trustees (of a cemetery company) are violating their duty or exceeding the powers granted, the Attorney General, as the principal legal representative of the public charged with the protection of the common interest in the trust, is a necessary party to the litigation." Id. In codifying that common law principle, the New Jersey legislature evidently adopted the view that the Attorney General and the newly-created cemetery board should be joined as parties representing the public's interest in all litigation involving New Jersey cemetery companies.
 
 
 26
 None of the parties to this action has questioned that by naming the Attorney General and cemetery board as defendants, Ramada Inn has, in fact, named the State of New Jersey as a party. Recently, the Supreme Court has twice had occasion to reaffirm the view that a state is not a citizen for purposes of diversity jurisdiction, while recognizing "that a political subdivision of a State, unless it is simply 'the arm or Alter ego of the State,' is a citizen of the State for diversity purposes." Moor v. County of Alameda, 411 U.S. 693, 717, 93 S.Ct. 1785, 1800, 36 L.Ed.2d 596 (1973), Quoting State Highway Commission of Wyoming, supra at 199, 49 S.Ct. 104. Accord Illinois v. City of Milwaukee, 406 U.S. 91, 97 & n.1, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). In my view there can be no question but that for purposes of this lawsuit, and actions involving New Jersey cemetery companies generally, the Attorney General and cemetery board represent the State of New Jersey and act as its "arm or Alter ego." See Glenmede Trust Co. v. Dow Chemical Co., 384 F.Supp. 423, 430-32 (E.D.Pa.1974) (where the Pennsylvania Attorney General was named as a party to an action involving a charitable trust, he performed a uniquely governmental function concerning public rights, and removal on the basis of diversity was impossible, the state being considered a party to the suit).
 
 
 27
 Although I believe that the Attorney General and cemetery board are participating in this lawsuit as the alter ego of the State of New Jersey, that does not end the inquiry. The Supreme Court has made it clear that not every action in which the state, or an agency acting on its behalf, is named as a party is outside the diversity jurisdiction of the federal courts. The majority correctly reads the relevant Supreme Court precedent as adopting a "real party in interest" test as the standard to be applied in determining whether the presence of the state as a nominal party will preclude diversity jurisdiction. I believe that that test, as it has been applied by the Court, is too rigid in failing to account for the type of interest New Jersey has in the outcome of this lawsuit.
 
 
 28
 Ordinarily when diversity jurisdiction is challenged on the ground that some nondiverse defendants have been named, the district court may drop such defendants and retain jurisdiction if the dropped parties are not "indispensable." See Riverside Memorial Mausoleum, Inc. v. UMET Trust, 581 F.2d 62, 66 (3d Cir. 1978); Girardi v. Lipsett, Inc., 275 F.2d 492, 494 n.1 (3d Cir.) (Goodrich, J.), Cert. denied, 364 U.S. 821, 81 S.Ct. 56, 5 L.Ed.2d 50 (1960). It seems curious that the applicable inquiry would change from indispensability to a real party in interest test when the nondiverse defendant is a state rather than a citizen of the same state as the plaintiff. The Supreme Court, however, clearly applied the latter test in Missouri, Kansas & Texas Railway Co. v. Missouri Railroad & Warehouse Commissioners, 183 U.S. 53, 22 S.Ct. 18, 46 L.Ed. 78 (1901).
 
 
 29
 In Missouri Railway the Court held that the State of Missouri was not the real party plaintiff in an action brought by the state railroad commission to enjoin an out of state railway company from charging excessive and illegal rates for travel over a bridge. Thus, the Court reversed a state court judgment that had denied the railway company's petition for removal on the basis that the presence of the state as a party destroyed diversity jurisdiction. The Court concluded that the interested parties in the action were the railway company and those members of the public who used the bridge, and noted that the action was not one "to recover any money for the state," and that "(i)ts results will not enure to the benefit of the state as a state in any degree." 183 U.S. at 59, 22 S.Ct. at 21. Missouri's general "governmental interest in the welfare of all its citizens," was deemed insufficient to render the state "as an organized political community" a party in interest to the railroad commission's suit. Id. 60, 22 S.Ct. 21.
 
 
 30
 I am not certain that the result reached in Missouri Railway, or the analysis there applied, would be reaffirmed by a majority of the Court today. Nonetheless, I find no evidence in later decisions of the Court signalling a retreat from Missouri Railway. To be sure, in Ex parte Nebraska, 209 U.S. 436, 28 S.Ct. 581, 52 L.Ed. 876 (1908), Chief Justice Fuller framed the applicable inquiry in a case in which the state was named as a party to the suit as whether the state was a "necessary and indispensable party" such that diversity jurisdiction would not lie:
 
 
 31
 If this case is one wherein there was a controversy wholly between citizens of different States, to the complete determination of which other parties to the record were not indispensable or necessary, then the removal being properly sought on that ground, the Federal court had jurisdiction. If the State of Nebraska was not an indispensable party by reason of its interest in the controversy, its presence on the record as a plaintiff would not defeat the jurisdiction of the Federal court.
 
 
 32
 209 U.S. at 444, 28 S.Ct. at 584. Nonetheless, Ex parte Nebraska expressly reaffirmed the decision in Missouri Railway, and Chief Justice Fuller's language indicated that he was of the view that the real party in interest inquiry was interchangeable with and identical to an inquiry as to whether the state was a necessary and indispensable party. Thus, he stated "that the mere presence on the record of the State as a party plaintiff, will not defeat the jurisdiction of the Federal court when it appears that the State has no real interest in the controversy." Id.
 
 
 33
 Some federal courts have used an indispensability inquiry when confronted with the issue presented in this case. For example, in Fifty Associates v. Prudential Insurance Co., 446 F.2d 1187, 1192 (9th Cir. 1970), where a state tax commission was named as a defendant, the Court of Appeals remanded the case to the district court for a determination as to whether the commission could be dismissed as a party not indispensable to the action and the lawsuit proceed. Of course, if a like inquiry were to be applied here, a determination that the state defendants could be dropped from this lawsuit as not indispensable to its maintenance would come into obvious conflict with the contrary judgment of the New Jersey legislature. That conflict never surfaces in the majority opinion in this case because this action is not, in the words of Missouri Railway, one "to recover any money for the state," and "(i)ts results will not enure to the benefit of the state as a state in any degree."
 
 
 34
 If the question were open I would base my decision as to whether the state's presence in this lawsuit precludes the exercise of diversity jurisdiction not only on the direct effects that a decree in this action might have on the state, but also on the more general interests of the state in the outcome of the suit. As I have already noted, the New Jersey legislature has here determined that the state Attorney General and cemetery board are necessary and indispensable parties to any litigation involving cemetery companies. That determination is based on state substantive law involving the need to protect the common interest in quasi-public charitable trusts, and hence is not merely a codification of the state's general governmental interest in the welfare of all its citizens that was deemed insufficient to deprive the federal courts of diversity jurisdiction in Missouri Railway. See Glenmede Trust, supra (finding that a state law rule requiring the joinder of the state attorney general as Parens patriae in all actions involving charitable trusts renders impossible removal of such an action on the basis of diversity jurisdiction). Moreover, an examination of the nature of the proceedings here reveals that there is reason to credit the legislature's judgment that the State of New Jersey has an interest in the outcome of this lawsuit.
 
 
 35
 As the majority notes, New Jersey has a potential interest in "insuring that Rosemount make the mandatory contribution to its trust fund should the sale to Ramada ever be consummated." at 1307. More importantly, however, the purpose of New Jersey's pervasive regulation of cemetery companies is to insure that those companies will maintain the financial stability needed for their continued future service to the public. See, e. g., N.J.Stat.Ann. § 8A:4-1 ("It is hereby declared to be the public policy of this State that a primary obligation of each cemetery company shall be the creation of an adequate fund for the permanent maintenance and preservation of the cemetery."); Id. § 8A:5-11 (exempting the trust funds and income therefrom from taxation and assessment, seizure or sale by execution on any judgment against the cemetery company). The relief requested in this lawsuit by Ramada and by the intervening real estate broker certainly implicates the state's interest in preserving Rosemount's financial stability. Ramada's complaint seeks not only the return of its deposit on the land that was to be purchased, but also requests the recovery of its engineering expenses, legal fees and other costs incidental to the alleged breach of contract. J. I. Kislak Realty Corporation, the broker, seeks a judgment against Rosemount for its lost commission, in the amount of $75,000.00 plus interest, if the court determines that the cemetery company breached its sales agreement with Ramada.
 
 
 36
 The state's interest in the outcome of this suit is also apparent in other ways. For example, Ramada asks that a lien be imposed upon the cemetery company's premises for the amount found by the court to be due. New Jersey law would seem to prohibit the imposition of such a lien upon lands dedicated for cemetery purposes, but the Cemetery Act does provide that the state Superior Court may sequester the rents, issues, profits, income and revenues derived from those lands in order to satisfy a judgment recovered against a cemetery company in the state courts. See N.J.Stat.Ann. §§ 8A:5-12 & 5-13. These statutory provisions lend further support to the view that New Jersey's interest in litigation involving cemetery companies is not the general governmental interest that any state may assert on behalf of the welfare of all its citizens.
 
 
 37
 Viewing the nature of these proceedings as a whole, I conclude that the State of New Jersey has a real interest in the outcome of this suit. Although that interest is not of the sort that implicates the state's eleventh amendment sovereign immunity, I believe it should be sufficient to prevent the exercise of diversity jurisdiction in this case. Where the judgment of a state legislature that its agencies are necessary and indispensable parties to an action is supported by a common law tradition and by the practicalities of the relief requested in a given case, I would credit that judgment. Because I believe, however, that language used by the Supreme Court in prior opinions leads to a contrary conclusion, I concur in the majority's holding that the state defendants in this lawsuit may be considered as nominal parties having no effect on the jurisdiction of the district court.
 
 
 
 [1]
 See also N.J.Stat.Ann. § 8A:2-3 which provides:
 In any action or proceeding affecting or instituted by any cemetery company the Attorney General and the New Jersey Cemetery Board shall be served with notice thereof in the same manner as any necessary party and shall take such steps in the action or proceeding as may be deemed necessary to protect the public interest.
 
 
 [2]
 The Eleventh Amendment states:
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 
 
 [3]
 See State Highway Commission v. Utah Construction Co., supra, 278 U.S. at 199-200, 49 S.Ct. 104
 
 
 [4]
 Quern v. Jordan, --- U.S. ----, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)
 
 
 [5]
 Section 8A:4-2 provides in relevant part:
 There shall be established, by each and every cemetery operating within this State under certificate of authority issued therefor by the New Jersey Cemetery Board, a special, irrevocable trust fund for the purpose of continuous maintenance and preservation of the cemetery. The fund shall be called the Maintenance and Preservation Fund.
 The creation, perpetuation and operation of the fund shall be supervised by the cemetery board pursuant to the provisions of this act. The said board may make such rules and promulgate such regulations as it deems necessary to insure proper and effective compliance with the purpose of this chapter.
 N.J.Stat.Ann. § 8A:4-15 provides:
 A cemetery company may sell free from any dedication for cemetery purposes, subject to prior approval of the board, any land or interest in land which is not, in the judgment of the cemetery company, necessary or suitable for interment purposes, providing no interment has been made therein. As a further condition of any such sale, the deed of conveyance shall be required to include a perpetual prohibition on the use of the premises so conveyed for any of the purposes or uses in which cemetery companies are, by the terms of this act (N.J.S. 8A:5-3), specifically prohibited from engaging. Not less than 15% Of the proceeds of said sale shall be deposited in the maintenance and preservation fund.
 
 
 [6]
 Our conclusion that New Jersey has no immediate pecuniary interest in this fund is consistent with the position taken by the attorney general. At oral argument before the trial judge he stated:
 The maintenance and preservation fund is really not affected until such time as the contract is consummated and the funds are due to be deposited therein. So our interest at this present time is somewhat speculative. And that's why the State has taken a very neutral position.
 Appendix at 115a.