The GIBSON–HOMANS
COMPANY

v.

NEW JERSEY TRANSIT CORPORA-
TION, Consolidated Rail Corporation
and New Jersey Department of Trans-
portation.

Civ. A. No. 81–3773.

United States District Court,
D. New Jersey.

July 15, 1982.

*Aero Lodge No. 735*, 390 U.S. 557, 560–61, 88 S.Ct. 1235, 1237, 20 L.Ed.2d 126 (1968).

Eugene J. McDonald, Heuser & McDonald, Matawan, N.J., for plaintiff.

Kenneth M. Worton, Deputy Atty. Gen., Public Transp. Section, Newark, N.J., for defendants N.J. Transit and N.J. Dept. of Transp.

24. Respondents remain free to amend the complaint in the federal action if justice so requires. Fed.R.Civ.P. 15(a).

Laurence M. McHeffey, Hanlon, Dempsey & McHeffey, West Long Branch, N.J., for defendant Consolidated Rail.

## OPINION

Plaintiff Gibson-Homans Company operates a manufacturing plant in Matawan, New Jersey located near defendant New Jersey Transit Corporation's ("New Jersey Transit") North Jersey Coast Line. Beginning in 1955, plaintiff received rail service to this plant by means of a rail freight siding running from the plant to the North Jersey Coast Line. Since 1970, this rail service has been provided by defendant Consolidated Rail Corporation ("Conrail"). As part of a program to improve the North Jersey Coast Line, defendant New Jersey Transit decided to remove that portion of the rail freight siding running to plaintiff's plant which traversed New Jersey Transit's right-of-way.

On July 30, 1981, New Jersey Transit notified plaintiff that the rail siding would be removed on September 1, 1981. On August 31, 1981, plaintiff obtained an *ex parte* restraining order from the Superior Court of New Jersey, Law Division, Monmouth County prohibiting defendants from removing the siding. On September 4, 1981, the order was dissolved on defendants' motion and the rail siding was subsequently removed.[1]

On December 8, 1981, plaintiff brought this action pursuant to 28 U.S.C. § 1332 seeking an order directing defendants New Jersey Transit and Conrail to relocate the rail freight siding so that rail service could continue to be provided to the Matawan plant.[2] Alternatively, plaintiff seeks an order directing defendants to negotiate with plaintiff on the issue of providing rail services to the plant. Finally, plaintiff seeks a declaration that defendants' actions constitute a taking under the New Jersey Eminent Domain Act, N.J.S.A. §§ 20:3–1 *et seq.*, and an order requiring defendants to file a complaint in inverse condemnation.

Defendant New Jersey Transit now moves to dismiss the action on the ground that diversity jurisdiction may not be properly asserted against it because it is the alter ego of the State of New Jersey and therefore not a citizen of a state for diversity purposes.[3] The Court has determined that the motion should be granted and that the action should be dismissed.[4]

## DISCUSSION

It is well settled that an action brought against a state by a citizen of another state is not cognizable under 28 U.S.C. § 1332. *Ramada Inns, Inc. v. Rosemount Memorial Park Assn.*, 598 F.2d 1303, 1306 (3d Cir.1979). Diversity jurisdiction is also lacking where suit is brought against an agency or instrumentality that is the alter ego of the state. *Harris v. Pennsylvania Turnpike Commission*, 410 F.2d

1. The state court proceedings are still pending. At oral argument on May 24, 1982, plaintiff stated that it would dismiss the suit pending in the Superior Court should this action continue.

2. This action was originally brought against the New Jersey Department of Transportation as well as New Jersey Transit and Conrail. At oral argument on May 24, 1982, however, plaintiff voluntarily dismissed its claim against the Department, conceding that it is the alter ego of the State of New Jersey.

3. Although this action could proceed against defendant Conrail alone, following the dismissal of New Jersey Transit, plaintiff stated at the hearing of May 24, 1982 that it did not wish to proceed with this suit if Conrail were the sole defendant.

4. Defendant New Jersey Transit also asserts that the action should be dismissed because it is immune from suit under the Eleventh Amendment; because plaintiff has failed to meet the requirements of the New Jersey Tort Claims Act and the New Jersey Contractual Liability Act; because the relief sought would constitute a gift of public monies to plaintiff in violation of the New Jersey Constitution; because plaintiff has failed to exhaust its administrative remedies before the Interstate Commerce Commission; and because an identical action is pending in state court. In addition, defendant Conrail has joined in the motion to dismiss on the last two grounds enumerated above. Since the Court has determined that the action should be dismissed because New Jersey Transit is the alter ego of the State, we need not reach these additional contentions.

1332, 1333 n. 1 (3d Cir.1969), *cert. denied,* 396 U.S. 1005, 90 S.Ct. 558, 24 L.Ed.2d 497 (1970). In determining whether or not New Jersey Transit is the alter ego of the State for diversity purposes, the Court must perform the same analysis required in order to determine whether New Jersey Transit is immune from suit under the Eleventh Amendment. *Blake v. Kline,* 612 F.2d 718, 726 & n. 16 (3d Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980).

As set forth in *Urbano v. Board of Managers of New Jersey State Prison,* 415 F.2d 247, 250–51 (3d Cir.1969), *cert. denied,* 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970) and *Blake v. Kline,* 612 F.2d at 722–26, this analysis is governed by the following factors: (1) how local law defines the status and nature of New Jersey Transit and its relation to the State of New Jersey; (2) whether payment of the judgment will be made from the state treasury or from New Jersey Transit's own funds; (3) whether New Jersey Transit is performing a governmental or proprietary function; (4) whether New Jersey Transit has been separately incorporated; (5) the degree of autonomy exercised by New Jersey Transit over its own operations; (6) whether New Jersey Transit has the power to sue and be sued and to enter into contracts; (7) whether New Jersey Transit's property is immune from state taxation; and (8) whether New Jersey has insulated itself from responsibility for New Jersey Transit's operations. The Third Circuit has indicated that the second and fifth factors are the most important, *Id.* at 723–725, *see also Unified School District # 480 v. Epperson,* 583 F.2d 1118, 1121–22 (10th Cir.1978), and has cautioned that "in a close case . . . evidence beyond the mere statutory language is required." *Id.* at 726.[5]

New Jersey Transit was created by the New Jersey Public Transportation Act of 1979, L.1979, c. 150, codified at N.J.S.A. § 27:25–1 *et seq.,* as the successor of the Commuter Operating Agency of the New Jersey Department of Transportation. It is "established in the Executive Branch of the State Government" as "a body corporate and politic with corporate succession," and is allocated within the Department of Transportation. N.J.S.A. § 27:25–4(a). The corporation is "constituted as an instrumentality of the State exercising public and essential governmental functions" and the exercise of its powers is "held to be an essential governmental function of the State." *Id.*

The powers of the corporation are vested in a seven-member governing board consisting of the New Jersey Commissioner of Transportation, the State Treasurer and another member of the Executive Branch selected by the Governor, who sit *ex officio,* and four public members appointed by the Governor with the advice and consent of the Senate. N.J.S.A. § 27:25–4(b). The Commissioner of Transportation chairs the board and is given the power to review New Jersey Transit's expenditures and its proposed budget. N.J.S.A. § 27:25–20(a). The Legislature has declared, however, that the corporation is "independent of any supervision or control by the [Transportation] department or by any body or officer thereof." N.J.S.A. § 27:25–4(a). Board members may be removed from office by the Governor for cause, N.J.S.A. § 27:25–4(b), and the Governor has veto power over any action taken by the Board. N.J.S.A. § 27:25–4(f).

New Jersey Transit has the power to sue and be sued, N.J.S.A. § 27:25–5(a); however, the New Jersey Tort Claims Act, N.J.S.A. §§ 59:1–1 *et seq.,* and the New Jersey Contractual Liability Act, *see* N.J.S.A. § 27:25–19, are applicable to suits brought against it. Several statutory provisions give the corporation the power to enter into contracts. N.J.S.A. §§ 27:25–5(r), 25–5(v) & 25–6. The corporation may buy land, N.J.S.A. § 27:25–13, purchase and own capital stock and equipment, N.J.S.A. §§ 27:25–5(u) & 25–10, purchase and own

---

5. *Cf. In re New York, Susquehanna & Western R.R. Co.: Scott v. New Jersey Transit Corp.,* Bankruptcy No. 76–182 (D.N.J. Sept. 22, 1981) (relying on statutory language alone in finding that New Jersey Transit is not the alter ego of the State for Eleventh Amendment purposes).

real and personal property, N.J.S.A. § 27:25–5(j), and lease or sell its property, N.J.S.A. § 27:25–5(k); however, for tax purposes at least, all property owned by the corporation is deemed to be state property. N.J.S.A. § 27:25–16. The corporation has been given the power of eminent domain, N.J.S.A. § 27:25–13(a)–(c)(1).

New Jersey Transit may collect fares from its operations, N.J.S.A. § 27:25–5(n), and may collect fees and rental charges from its properties, N.J.S.A. § 27:25–5(o). The corporation may also seek money from any federal, state or local agency or from any private source. N.J.S.A. § 27:25–5(g). The corporation is prohibited from incurring a deficit, N.J.S.A. § 27:25–17, or from issuing bonds. The State has explicitly disclaimed liability for any debts or liabilities of the corporation, *id.;* however, New Jersey Transit receives an annual appropriation from the New Jersey Legislature through the Department of Transportation. In Fiscal Year 1982, New Jersey Transit received an appropriation of $104 million from the legislature. L.1981, c. 190.

New Jersey Transit may deposit its revenues in interest-bearing accounts or in the State of New Jersey Cash Management Fund. N.J.S.A. § 27:25–5(p). The Cash Management Fund is a common trust fund, established and maintained by the Director of the Division of Investment of the Department of the Treasury under the custodianship of the State Treasurer which serves as a legal depository for public monies. N.J.S.A. § 52:18A–90.4. Investment of the fund is subject to the limitations which govern investment of funds in the state treasury, *id.,* and the fund may contain money that inures to the benefit of the General State Fund. N.J.S.A. § 52:18A–90.1. New Jersey Transit is exempt from state taxation. N.J.S.A. § 27:25–16.

Labor relations between New Jersey Transit and its employees are governed by the New Jersey Employer-Employee Relations Act, N.J.S.A. § 34:13A–1 *et seq.,* and are within the jurisdiction of the Public Employees Relations Commission. N.J.S.A. § 27:25–14(c). Labor disputes are to be resolved by arbitration; however, the "cost to the state of the first year portion of any arbitration award shall not exceed the appropriations permitted within the provisions of the 'State Expenditures Limitation Act.'" *Id.* The corporation must consult with state authorities in developing an employee compensation schedule, and must file the schedule with these authorities when it is completed. N.J.S.A. § 27:25–15. The corporation is subject to the provisions of the New Jersey Open Public Meetings Act, N.J.S.A. § 27:25–4(g), its records and papers are public records open to public inspection, N.J.S.A. § 27:25–20, and its rules and regulations must be filed in accordance with the New Jersey Administrative Procedure Act. N.J.S.A. § 27:25–5.

■ The Court's analysis of the characteristics of New Jersey Transit in light of the factors outlined in *Urbano* and *Blake* dictates the conclusion that New Jersey Transit is the alter ego of the State for diversity purposes. First, New Jersey Transit is by statute a state instrumentality performing an essential governmental function. As such, it has been granted complete immunity from state taxation. Second, the corporation does not have substantial autonomy from the state government in carrying out its functions. While the legislature has declared that the corporation is independent of any supervision or control by the Department of Transportation, it has also made the Commissioner of Transportation chairman of New Jersey Transit's governing board and has given him the responsibility of reviewing the corporation's budget. Moreover, whatever the relationship of New Jersey Transit to the Department of Transportation, it is clear that the corporation is not autonomous from the Executive Branch as a whole given the Governor's power to appoint all of the members of the governing board, to remove them for cause and to veto any decision made by the board.

Third, we find that any judgment against New Jersey Transit will have a financial impact on the state. While the state has disclaimed any responsibility for the debts and liabilities of the corporation, it has in fact appropriated over $100 million to New Jersey Transit for the current fiscal year. As New Jersey Transit points out, without contradiction by plaintiff, the fiscal realities

of operating a public transportation system, coupled with the inability of the corporation to incur debt or to raise money through sale of its own bonds, dictates the continuation of appropriations of state funds to New Jersey Transit. This substantial and continuing contribution of state money to New Jersey Transit's budget is a sufficiently direct effect on the state treasury to support a finding that New Jersey Transit is the alter ego of New Jersey. *Fitzpatrick v. Bitzer*, 519 F.2d 559, 564–65 (2d Cir.1975), *rev'd on other grounds*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). This conclusion is further supported by the fact that all property of New Jersey Transit is deemed by statute to be state property and by the fact that all funds of New Jersey Transit are, by definition, public monies, since they may be placed in the New Jersey Cash Management Fund.

Finally, we note that there are numerous indicia not explicitly set forth in *Urbano* and *Blake* that New Jersey Transit is an arm of the state. Thus, it has been given the power of eminent domain, suits against it are governed by the New Jersey Contractual Liability Act and the New Jersey Tort Claims Act, it is within the jurisdiction of the Public Employees Relations Commission, it is subject to the New Jersey Administrative Procedure Act and Open Public Meetings Act, and it has been represented in this litigation, as it must be by statute, by the Attorney General's Office.

There are several factors—New Jersey Transit's power to sue and be sued, its power to enter into contracts and own property and its creation as a body corporate and politic—which could indicate that New Jersey Transit should not be considered the alter ego of the State for diversity purposes.[6] These factors, however, are far outweighed by those supporting the conclusion that New Jersey Transit is an arm of the state. Accordingly, the Court finds that New Jersey Transit is the alter ego of the State of New Jersey, and that this action must be dismissed for want of diversity jurisdiction.[7]

6. There have been no reported decisions by any New Jersey state courts discussing the issue of whether New Jersey Transit is an arm of the state. State court decisions involving other agencies, such as the New Jersey Highway Authority or the New Jersey Turnpike Authority, are of little value given the distinctions between the characteristics of those bodies and those of New Jersey Transit. In *Walker v. Transport of New Jersey*, 534 F.Supp. 719, 720–21 (E.D.Pa.1982), the court held that the Eleventh Amendment barred a suit against Transport of New Jersey, a bus company wholly-owned by New Jersey Transit. The status of Transport of New Jersey, and, perforce, of New Jersey Transit, as a state agency was not contested.

7. Plaintiff argues that regardless of the Court's view of the merits of this issue, the Court should, as a matter of comity, follow Judge Whipple's holding in *In re New York, Susquehanna & Western R.R. Co.: Scott v. New Jersey Transit Corp.*, Bankruptcy No. 76–182 (D.N.J. Sept. 22, 1981), that New Jersey Transit is not the alter ego of the State. Judge Whipple, however, has chosen not to publish his decision. The decision therefore has no formal precedential effect, nor should it bind us as a matter of comity. The Court has carefully considered Judge Whipple's opinion in deciding the issue raised here, and, fully realizing that the issue is not free from doubt, has reached a contrary conclusion.