**George P. SMITH, Jr.**

v.

**NEW JERSEY TRANSIT CORPORATION and James F. Gordon.**

**Civ. A. No. 88–3094.**

United States District Court, E.D. Pennsylvania.

July 28, 1988.

David Zwanetz, Philadelphia, Pa., for plaintiff.

Joseph T. Bodell, Jr., Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This action is brought by plaintiff George P. Smith, Jr., a resident of Pennsylvania, against defendants New Jersey Transit Corporation ("New Jersey Transit") and James F. Gordon, a resident of New Jersey, for personal injuries he sustained as a result of an accident involving vehicles operated by plaintiff and Mr. Gordon, an employee of New Jersey Transit. Jurisdiction is allegedly based upon diversity of citizenship pursuant to 28 U.S.C. Section 1332(a). Defendants contend that as a public agency of the state of New Jersey, defendant New Jersey Transit is immune from suit in a federal court pursuant to the eleventh amendment to the Constitution. In addition, defendants contend that because defendant Gordon is being sued in his official capacity as an "agent, servant, workman, or employee" of defendant New Jersey Transit, he, too, is immune from suit under the provisions of the eleventh amendment.

## I.

■ It is well established that pursuant to the eleventh amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Employees v. Missouri Dept. of Public Health and Welfare*, 411 U.S. 279, 280, 93 S.Ct. 1614, 1616, 36 L.Ed.2d 251 (1973). When a state agency or state official is the named defendant, the eleventh amendment will bar the lawsuit if "the state is the real, substantial party in interest." *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) *quoting Ford Motor Company v. Department of Treasury of Indiana*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). It is not necessary that the state be named as a party, only that the named party is, in actuality, the alter ego of the state. *Blake v. Kline*, 612 F.2d 718, 721 (3d Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed. 2d 1112 (1980).

■ Determination of whether a state agency is the sovereign's alter ego turns upon facts widely variant from case to case. *Ramada Inns, Inc. v. Rosemount Memorial Park Ass'n*, 598 F.2d 1303, 1306 (3d Cir.1979). Nevertheless, our determination of the issue must be governed by the following factors: (1) how local law defines the status and nature of the agency; (2) whether payment of the judgment, if any, would deplete the public treasury; (3) whether the agency is performing a governmental or proprietary function; (4) the degree of autonomy exercised by the agency over its own operations; (5) whether the agency's property is immune from state taxation; (6) whether the agency has been separately incorporated; (7) whether the agency has the power to sue and be sued and enter into contracts; and (8) whether the sovereign has immunized itself from responsibility for the agency's operations. *See Urbano v. Board of Managers of New Jersey State Prison*, 415 F.2d 247, 250–51 (3d Cir.1969), *cert. denied*, 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970); *Blake v. Kline*, 612 F.2d at 722–26; *Gibson–Homans Co. v. New Jersey Transit Corp.*, 560 F.Supp. 110, 112 (D.N.J.1982). The Third Circuit has cautioned that "in a close case ... evidence beyond the mere statutory language is required" to determine the issue. *Blake v. Kline*, 612 F.2d at 726.

## II.

New Jersey Transit was created by the New Jersey Public Transportation Act of 1979, L. 1979, c. 150, *codified at* N.J.S.A. Section 27:25–1 *et seq.*, as the successor of the Commuter Operating Agency of the New Jersey Department of Transportation. As a public corporation, New Jersey transit is:

Charged with coordinating and improving bus and rail services throughout the state. It is one of the nation's largest public transit agencies, providing 170 million passenger trips annually. It has three subsidiaries, NJ Transit, NJ Transit Bus and NJ Transit Mercer.... NJ Transit provides operating subsidies to seven private bus companies and capital assistance to 140 private carriers.

Legislature of New Jersey, *Manual* at 694 (1986). Those courts which have previously addressed the issue have concluded that New Jersey Transit is the alter ego of the state of New Jersey. *See Cianfrani v. New Jersey Transit Bus Operations,* No. 87–3707 (E.D.Pa. Aug. 10, 1987) [available on WESTLAW, 1987 WL 15624]; *Brotnitsky v. New Jersey Transit Authority,* No. 85–0314 (E.D.Pa. March 20, 1985); *Gibson–Homans Co. v. New Jersey Transit Corp.,* 560 F.Supp. 110 (D.N.J.1982); *Walker v. Transport of New Jersey,* 534 F.Supp. 719 (E.D.Pa.1982).

Application of the factors outlined in *Urbano* and *Blake* dictates the conclusion that New Jersey Transit is the alter ego of the state of New Jersey. We deal, in turn, with each of the aforementioned factors.

**(1) How Local Law Defines the Status and Nature of New Jersey Transit**

The question of whether an agency is the alter ego of a state and thereby immune from federal jurisdiction under the eleventh amendment is a question of federal, not state law. *Harris v. Pennsylvania Turnpike Commission,* 410 F.2d 1332, 1334 n. 1 (3d Cir.1969), *cert. denied,* 396 U.S. 1005, 90 S.Ct. 558, 24 L.Ed.2d 497 (1970). However, state court decisions addressing the relationship of an agency to the state is an important factor in the determination of immunity. *Skehan v. Board of Bloomsburg State College,* 538 F.2d 53, 62 (3d Cir.) (en banc), *cert. denied,* 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976).

In *Transport of New Jersey v. Matos,* 202 N.J.Super. 571, 495 A.2d 503, 505 (1985), the Superior Court of New Jersey held that "the inescapable conclusion to be drawn from the legislative history and statutes of the New Jersey Public Transportation Act of 1979 is that TNJ is a public entity." In reaching this conclusion, the Superior Court cited with approval *Gibson–Homans Co. v. New Jersey Transit Co.,* 560 F.Supp. at 112 in which the United States District Court for the District of New Jersey held that New Jersey Transit was, in fact, the alter ego of the state of New Jersey.

The enabling statute, itself, defines New Jersey Transit in the following manner:

There is hereby established in the Executive Branch of the State Government, the New Jersey Transit Corporation ... The corporation is hereby constituted as an instrumentality of the State, exercising public and essential governmental functions.

N.J.S.A. Section 27:25–4(a). Further, New Jersey Transit has been granted the power of eminent domain, N.J.S.A. Section 27:25–13(a)-(c)(1); suits against it are governed by the New Jersey Contractual Liability Act and the New Jersey Tort Claims Act, N.J.S.A. Sections 27:25–19 and 59:1–1; it is within the jurisdiction of the Public Employees Relations Commission, N.J.S.A. Section 27:25–14(c); it is subject to the New Jersey Administrative Procedure Act and Open Public Meetings Act, N.J.S.A. Sections 27:25–5 and 27:25–4(g); and its records and papers are public records open to public inspection. N.J.S.A. Section 27:25–20. We, therefore, conclude that local law defines the status of New Jersey Transit in a manner indicating that it is the alter ego of the state of New Jersey.

**(2) Whether Payment of the Judgment Would Deplete the Public Treasury**

While the state of New Jersey has explicitly disclaimed liability for any debts or liabilities incurred by New Jersey Transit, N.J.S.A. Section 27:25–17, the agency receives an annual appropriation from the New Jersey Legislature through the Department of Transportation. In the Fiscal Year ending June 30, 1987, New Jersey Transit received an appropriation of $167,399,000.00 which represented approximately 31% of its total revenues and operating subsidies. New Jersey Transit, *Annual*

*Report* at 30 (1987). New Jersey Transit is prohibited from incurring a debt and is limited in its ability to issue bonds. N.J.S.A. Sections 27:25–17 and 27:25–5(w). Thus, given the fiscal realities of operating a major public transportation system, coupled with the inability of the agency to incur debt or fully finance itself, it becomes clear that the state of New Jersey will be required to continue to appropriate significant public monies to the agency.

The ongoing appropriation by the state of New Jersey of a significant portion of New Jersey Transit's operating budget, while important, is not necessarily dispositive of the eleventh amendment inquiry. Indeed, as the Third Circuit has stated:

> The existence of even significant state financial support will not necessarily encase an entity with eleventh amendment immunity. Rather, a court should consider whether the state, in making the contribution, is acting in the role of the sovereign or is contributing in some other capacity.

*Blake v. Kline*, 612 F.2d at 724. In establishing New Jersey Transit, the state legislature recognized that provisions of mass transit is an essential governmental function:

> As a matter of public policy, it is the responsibility of the State to establish and provide for the operation and improvement of a coherent public transportation system in the most efficient and effective manner.

N.J.S.A. Section 27:25–2(b). Moreover, all funds of New Jersey Transit may be deposited in the New Jersey Cash Management Fund, N.J.S.A. Section 27:25–5(p), a common trust fund established and maintained by the Director of the Division of Investment of the Department of the Treasury under the custodianship of the State Treasurer which serves as a legal depository for public monies. N.J.S.A. Section 52:18A–90.4. We conclude, therefore, that the state of New Jersey is acting in its sovereign capacity when it appropriates significant sums of public monies to New Jersey Transit.

(3) Whether New Jersey is Performing a Governmental or Proprietary Function

As previously stated, the New Jersey Legislature explicitly stated that New Jersey Transit performs a governmental function in providing mass transit to New Jersey citizens. N.J.S.A. Section 27:25–4(a)

(4) The Degree of Autonomy Exercised By New Jersey Transit Over Its Own Operations

While the New Jersey Legislature has declared that New Jersey Transit is "independent of any supervision or control by the [Transportation] department or by any body or officer thereof," N.J.S.A. Section 27:25–4(a), we conclude that, upon careful scrutiny, New Jersey Transit does not enjoy substantial autonomy from the state government in carrying out its functions. Indeed, the seven member governing board of the agency consists of the New Jersey Commissioner of Transportation, the State Treasurer, another member of the Executive Branch selected by the Governor, each of whom sit ex officio, and four public members appointed by the Governor with the advice and consent of the Senate. N.J.S.A. Section 27:25–4(b). The Commissioner of Transportation chairs the governing board and is empowered to review New Jersey Transit's proposed budget and expenditures. N.J.S.A. Section 27:25–20(a). Board members may be removed from office by the Governor for cause, N.J.S.A. Section 27:25–4(b), and the Governor has veto power any any action taken by the governing board. N.J.S.A. Section 27:25–4(f).

We conclude, therefore, that New Jersey Transit does not have substantial autonomy from the state government in carrying out its functions. The lack of autonomy of New Jersey Transit is crucial to the determination of eleventh amendment immunity. Indeed, "[t]he primary purpose of the eleventh amendment is to assure that the federal courts do not interfere with a state's public policy and its administration of internal public affairs." *Blake v. Kline*, 612 F.2d at 725 *citing In re Ayers*, 123 U.S.

443, 505, 8 S.Ct. 164, 182, 31 L.Ed. 216 (1887). Thus, the lack of autonomy of New Jersey Transit further suggests it is the alter ego of the State under the eleventh amendment.

### (5) Whether the Agency's Property is Immune from State Taxation

For tax purposes, all property owned by New Jersey Transit is deemed to be state property. N.J.S.A. Section 27:25–16. Thus, New Jersey Transit pays no sales, real property, corporate franchise or income taxes but, rather, is subject to the in lieu tax payments provided in P.L. 1977, c. 272 (c. 54:4–2.2a). *Id.* New Jersey Transit, accordingly, enjoys immunity from taxation in a manner not offered to private entities.

### (6) Whether the Agency Has Been Separately Incorporated

New Jersey Transit was "established in the Executive Branch" as "a body corporate and politic with corporate succession." N.J.S.A. Section 27:25–4(a).

### (7) Whether the Agency Has the Power To Sue and Be Sued and Enter Into Contracts

New Jersey Transit is empowered to enter into contracts, N.J.S.A. Sections 27:25–5(r), 25–5(v) and 25–6, buy land, N.J.S.A. Section 27:25–13, purchase and own capital stock and equipment, N.J.S.A. Sections 27:25–5(u) and 25–10, purchase and own real and personal property, N.J.S.A. Section 27:25–5(j), and lease or sell its property. N.J.S.A. Section 27:25–5(k). Moreover, New Jersey Transit has the power to sue and be sued. N.J.S.A. Section 27:25–5(a), however, the New Jersey Tort Claims Act, N.J.S.A. Sections 59:1–1 *et seq.*, and the New Jersey Contractual Liability Act, N.J.S.A. Section 27:25–19, are applicable to suits brought against it.

In authorizing New Jersey Transit to both sue and be sued, the State of New Jersey arguably waived its sovereign immunity under state law by consenting to suits against a public agency in state court. However, a waiver of sovereign immunity under state law does not constitute a waiver of eleventh amendment immunity:

> [In] cases in which a state has consented to suit in its own courts by statute; consent to a similar suit in the federal courts has not been inferred absent a clear declaration in the statutory language that the state intended to waive its eleventh amendment immunity as well as its sovereign immunity under state law.

*Skehan v. Board of Trustees of Bloomsburg State College,* 590 F.2d 470, 487 (3d Cir.1978), *cert. denied,* 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979). Indeed, the Supreme Court has held that "[i]n deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360–61, 39 L.Ed.2d 662 (1974) *quoting Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909). We find nothing in the text which authorizes New Jersey Transit to sue and be sued in the state courts of New Jersey, which, in any way, supports a finding that New Jersey has waived its eleventh amendment immunity against suit in federal court.

### (8) Whether the Sovereign Has Immunized Itself From Responsibility For The Agency's Operations

As previously stated, the State of New Jersey has disclaimed liability for any debts or liabilities incurred by New Jersey Transit. N.J.S.A. Section 27:25–17.

In summary, there are several factors— New Jersey Transit's separate incorporation (factor 6), its power to sue and be sued and to enter into contracts (factor 7), and the state of New Jersey's legal immunization (factor 8)—which could indicate that New Jersey Transit should not be considered the alter ego of the state of New Jersey. However, these factors are significantly outweighed by those supporting the conclusion that New Jersey Transit is the

alter ego of the State. Therefore, because the real party in interest in this suit against New Jersey Transit is the state of New Jersey, this suit is prohibited under the eleventh amendment.

### III.

 It is well established that the eleventh amendment bars suits against state officials acting in their official capacity when the state is the real party in interest. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. at 100, 104 S.Ct. at 907. A review of plaintiff's complaint reveals that defendant James F. Gordon has been sued in his official capacity. Paragraph 6 of the complaint states that defendant, New Jersey Transit Corporation, "by and through its agent, servant, workman, or employee, James F. Gordon," was operating a bus owned by New Jersey Transit Corporation. Paragraph 8 of the complaint states that plaintiff's motor vehicle was involved in an accident with a vehicle,

> owned or leased by defendant, New Jersey Transit Corporation and was, at all times material hereto, operated by its agent, servant, workman, or employee, James F. Gordon, who was then and there engaged in and upon the performance of the duties of his employment, within the scope of his authority and upon the business of defendant, New Jersey Transit Corporation.

Thus, because defendant Gordon has been sued in his official capacity as an employee of New Jersey Transit which we have previously held is immune from this suit as provided by the eleventh amendment, defendant Gordon, too, is immune from suit.

### IV.

It is well settled that the party invoking jurisdiction has the burden of proving subject matter jurisdiction once a jurisdictional issue is raised. *International Association of Machinists v. Northwest Airlines*, 673 F.2d 700 (3d Cir.1982). Eleventh Amendment immunity is a question of subject matter jurisdiction. *Blake v. Kline*, 612 F.2d at 721. For the reasons set forth above, we have determined that the plaintiff has failed to establish the jurisdiction of this Court over either defendant New Jersey Transit or James F. Gordon. Accordingly, this action will be dismissed for lack of subject matter jurisdiction.