202 N.J. Super. 571 (1985)
495 A.2d 503
TRANSPORT OF NEW JERSEY, PLAINTIFF,
v.
JUSTINA MATOS, PREBISTERIO MATOS AND LIBERTY MUTUAL INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided March 29, 1985.
*572 Diane Glass for plaintiff (Irwin I. Kimmelman, Attorney General of New Jersey, attorney).
Arthur S.A. Pataky for defendants Matos (Alvin R. Leonard, attorney).
*573 James Malloy for defendant Liberty Mutual Insurance Company (Elliot N. Fabricant, attorney).
NEWMAN, J.S.C.
This summary judgment motion raises an issue of first impression in New Jersey as to whether or not Transport of New Jersey (hereinafter referred to as TNJ) is still required to provide uninsured motorist protection coverage following the enactment of the New Jersey Public Transportation Act of 1979 by which TNJ became a public corporation.
TNJ filed the present cause of action for a declaratory judgment after Justina and Prebisterio Matos filed suit against TNJ for injuries the wife suffered while a passenger in a TNJ bus on May 18, 1982. She allegedly fell and was injured when an unidentified motor vehicle cut off the bus and caused it to come to an abrupt stop. She brought suit against TNJ for negligence and to force TNJ to submit to an arbitration regarding the uninsured motorist protection. TNJ seeks to preclude defendants, Matos, and Liberty Mutual Insurance Company, Matos' carrier, from compelling TNJ to participate in an arbitration or from providing uninsured motorist insurance.
TNJ claims that it is a public entity. N.J.S.A. 27:25-4(a). As a public entity, TNJ is only subject to the imposition of liability within the bounds of the Tort Claims Act, N.J.S.A. 59:1-1 et seq. and the action of an uninsured motorist is outside the scope of the Tort Claims Act. On the other hand, defendants maintain that New Jersey case law requires TNJ to provide uninsured motorist protection coverage citing Crocker v. Transport of N.J., 169 N.J. Super. 498 (Law Div. 1979). Furthermore, defendants contend that TNJ, even when viewed as a public corporation, is required to provide uninsured motorist protection under N.J.S.A. 27:25-5(r) and -8(c).
In order to determine whether or not TNJ is a public entity subject to the provisions of the Tort Claims Act it is necessary to analyze the legislative history of the New Jersey *574 Public Transportation Act of 1979, L. 1979, c. 150, §§ 1-29, N.J.S.A. 27:25-1 et seq. In 1979 New Jersey provided subsidies to private companies who operated bus lines. The subsidy program had grown from $500,000 to $50 million by 1979. However, the private companies had still failed to increase ridership, stabilize fares, improve service and coordinate a comprehensive route system. Senate Bill 3137 sought to create a public corporation to solve the existing problems in the New Jersey bus system. Senate Bill 3137, New Jersey Transportation Act of 1979: Hearings before Senate Transportation and Communication Committee (1979) (Statement of Senator Francis X. Herbert, Vol. I at 1-4 and statement of Commissioner Louis Gambaccini, Vol. I at 8-32). The legislative intent to create a public entity is manifest in N.J.S.A. 27:25-4(a) which declares in no uncertain terms:
There is hereby established in the Executive Branch of the State Government the New Jersey Transit Corporation ... The corporation is hereby constituted as an instrumentality of the State, exercising public and essential governmental functions.... [N.J.S.A. 27:25-4(a)]
Aside from the legislative history, the statutes within the Public Transportation Act of 1979 themselves provide the basis for the court to find TNJ is a public entity. The powers of TNJ are vested in a seven-member governing board. The board is made up of the New Jersey commissioner of transportation, the state treasurer, and another member of the executive branch selected by the Governor, who sits ex-officio and four public members appointed by the Governor with the consent of the Senate. N.J.S.A. 27:25-4(b). The chairman of the board is the commissioner of transportation and he is given power to review TNJ's expenditures and proposed budget. N.J.S.A. 27:25-20(a). The TNJ is "independent of any supervision or control by the [transportation] department or by any body or officer thereof" N.J.S.A. 27:25-4(a). A board member may only be removed for cause by the Governor, N.J.S.A. 27:25-4(b) and the Governor has the power to veto any actions taken by the board. N.J.S.A. 27:25-4(f). For tax purposes all the property owned by TNJ is considered state property N.J.S.A. 27:25-16. Lastly, TNJ has *575 been given the power of eminent domain. N.J.S.A. 27:25-13(a)(c)(1). The inescapable conclusion to draw from the legislative history and statutes of the New Jersey Public Transportation Act of 1979 is that TNJ is a public entity. See Gibson-Homans Co. v. New Jersey Transit Co., 560 F. Supp. 110, 112 (D.N.J. 1982) (TNJ was held to be the alter ego of the State and therefore not a citizen for diversity purposes.)
It is beyond question that the New Jersey Tort Claims Act governs state liability in all tort claims. N.J.S.A. 59:2-1(a) insulates the state from liability. The act begins by immunizing the State from all liability in the following broad terms: "Except as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." In later provisions the act recognizes areas where the State will be subject to liability claims. N.J.S.A. 59:1-3 defines a public entity as "the State, and any county, municipality, district, public authority, public agency, and any other political subdivision or public body of the State." N.J.S.A. 27:25-4(a) plainly states that TNJ is a "public entity." TNJ must be considered a public entity within the definition of N.J.S.A. 59:1-3.
N.J.S.A. 59:2-2 provides the grounds on which a public entity may be held liable. It states: "A public entity is liable for injuries proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." Nowhere in the Tort Claims Act does it provide that a public entity may be held liable for acts of another. An uninsured motorist is clearly "another person" for whom the public entity may not be held liable.
Defendants argue that TNJ is liable for uninsured motorist protection under the holdings of Transport of New Jersey v. Walter, 161 N.J. Super. 453 (App.Div. 1978), mod. and aff'd 79 N.J. 400 (1979); Crocker v. Transport of New Jersey, 169 *576 N.J. Super. 498 (Law Div. 1979) and Mortimer v. Peterkin, 170 N.J. Super. 598 (App.Div. 1979). These cases stand for the proposition that as a self-insurer TNJ was required to provide uninsured motorist protection. However, all of these cases were decided when TNJ was still a private entity and not protected by the Tort Claims Act.
Even if TNJ is a public entity, as such, defendants argue that N.J.S.A. 27:25-5(r) required TNJ to secure uninsured motorist protection. N.J.S.A. 27:25-5(r) states that the corporation shall have the power and authority to:
Procure and enter into contracts for any type of insurance and indemnity against loss or damage to property from any cause, including loss of use and occupancy, against death or injury of any person, against employees' liability, against any act of any member, officer, employee or servant of the corporation, whether part-time, full-time, compensated or non-compensated, in the performance of the duties of his office or employment or any other insurable risk. In addition the corporation may carry its own liability insurance. [N.J.S.A. 27:25-5(r)]
While this provision authorizes TNJ to buy insurance or choose to act as a self-insurer, it does not address the basic exemption in the Tort Claims Act which insulates the State from liability for the acts of other people. See N.J.S.A. 59:2-1(a), -2(a). At best, N.J.S.A. 27:25-5(r) enables TNJ to provide for its insurance needs on a discretionary basis.
Lastly, defendants argue that TNJ as a public entity should be required to provide uninsured motorist protection under N.J.S.A. 27:25-8(c). That provision reads:
Notwithstanding any other provisions of this act, all vehicles used by any public or private entity pursuant to contract authorized by this act, and all vehicles operated by the corporation directly, shall be subject to the jurisdiction of the Department of Transportation with respect to maintenance, specifications and safety to the same extent such jurisdiction is conferred upon the department by Title 48 of the Revised Statutes. [N.J.S.A. 27:25-8(c)]
Defendants interpret the phrase "maintenance, specifications and safety" to require TNJ to satisfy the private bus operator insurance requirements found within Title 48. Like all private motorists, private bus companies are required to provide insurance. A private bus company may choose to act as a self-insured. *577 N.J.S.A. 48:4-12. Private bus companies are required to provide insurance to the extent found in N.J.S.A. 48:4-35 through -37 and N.J.S.A. 48:4-46 through -48. Since TNJ is required to provide insurance policies within Title 48, it is argued, TNJ must also provide uninsured motorist protection as mandated by N.J.S.A. 17:28-1.1. See Transport of New Jersey v. Walter, supra, 79 N.J. at 401.
Defendants' argument overlooks the fact that N.J.S.A. 27:28-8(a) expressly states that Title 48 should not apply to TNJ. Further, the insurance provisions within Title 48 are not included within the provisions found to apply to the corporation pursuant to N.J.S.A. 27:25-8(c). The word insurance was specifically deleted from N.J.S.A. 27:25-8(c). As first introduced, Senate Bill 3137, § 8b read:
all vehicles operated by the corporation directly, shall be subject to the jurisdiction of the Department of Transportation with respect to insurance, maintenance, specifications and safety. .. .
The adopted version of Senate Bill 3137 did not include the term insurance. In other words, "insurance" was eliminated in a later version of the bill that was adopted. For the court to read into this section the term "insurance" when the Legislature considered its inclusion and expressly deleted it from the bill would clearly violate the intent of the Legislature. While TNJ may choose to buy insurance or act as a self-insurer, N.J.S.A. 27:28-5(r), it is not obliged to meet the insurance provisions of Title 48 which a private bus company would have to satisfy. N.J.S.A. 27:25-8(c) therefore does not require TNJ to purchase or provide a policy within the meaning of N.J.S.A. 17:28-1.1.
The fact that uninsured motorist coverage would not be required of TNJ does not leave an injured bus passenger without a potential source of recovery in circumstances like the one presented here. Even if another carrier is not potentially responsible to provide coverage, the injured party would be allowed to file a claim against the Unsatisfied Claim and Judgment Fund, N.J.S.A. 39:6-23, -61 et seq., provided all the *578 elements of N.J.S.A. 39:6-70 are met. The minimum amounts of uninsured motorist protection required by N.J.S.A. 17:28-1.1(a) and (b) are $15,000 if a single person is injured in an accident and $30,000 if more than one person is injured in an accident. The Unsatisfied Claim and Judgment Fund provides the same potential dollar recovery. N.J.S.A. 39:6-69(a) and (b) authorizes the fund to provide recovery up to $15,000 if a single person is injured in an accident and up to $30,000 if more than one person is injured in an accident. Under these circumstances the injured passenger is in a position to obtain financial recovery and is not left without a remedy.
For the above reasons, defendant may not compel TNJ to arbitrate or to provide uninsured motorist protection. TNJ's motion for summary judgment is granted.