612 F.2d 718
 BLAKE, Margaret Anne, a minor, by Blake, James, her
Guardian, Appellant,
v.
KLINE, Caryl M.; Casey, Robert E.; Heddinger, Fred M.;
Jacobs, William F. Jr.; Killian, John D.; Angle, Jacque D.;
Moran, Francis; Eisenhart, J. Henry; Stackowski, Benjamin
L.; Corrado, Samuel; Harris, Richard C.; and the Public
School Employees' Retirement Board, Appellees.
 No. 79-1161.
 United States Court of Appeals,
Third Circuit.
 Argued Oct. 9, 1979.
Decided Dec. 20, 1979.
 
 Gordon W. Gerber, Arthur H. Rainey, Fred T. Magaziner (Argued), Dechert, Price & Rhoads, Philadelphia, Pa., for appellant.
 David H. Allshouse, Deputy Atty. Gen. (Argued), Norman J. Watkins, Deputy Atty. Gen. Chief, Civil Litigation, Edward G. Biester, Jr., Atty. Gen., Dept. of Justice, Commonwealth of Pennsylvania, Harrisburg, Pa., for appellees.
 Before ADAMS, ROSENN and WEIS, Circuit Judges.
 OPINION OF THE COURT
 ROSENN, Circuit Judge.
 
 
 1
 This appeal primarily raises the complex issue of whether the Public School Employees' Retirement Board of Pennsylvania is an Alter ego of the state so as to preclude the exercise of federal subject matter jurisdiction under the eleventh amendment, the diversity statute, and principles of state sovereign immunity. Because we conclude the record is deficient, we vacate the judgment of the district court and remand.
 
 I.
 
 2
 Plaintiff Margaret Anne Blake, a minor, ("Margaret") by James Blake, her guardian, both New Jersey residents, initiated this diversity action in the United States District Court for the Eastern District of Pennsylvania against the Public School Employees' Retirement Board and its officers ("PSERB" or "Board"), seeking damages in contract and tort. The complaint alleged that Margaret was entitled to $57,014.70 in benefits from the PSERB, accruing upon the death of her mother, Marie, a Philadelphia school teacher. The district court dismissed the complaint as barred by the eleventh amendment.
 
 
 3
 The complaint alleged that during the course of her employment Marie paid premiums to the PSERB and had an agreement which contractually bound the Board to pay certain death benefits to Marie's designated beneficiary in the event of Marie's death. The complaint further alleged that upon Marie's death on November 7, 1976, the PSERB became obligated to pay Margaret $57,014.70. The plaintiff claimed the PSERB purported to satisfy its obligation by issuing a check payable to "TILLIE BOONE GDN OF MARGARET BOONE" although no person named "Margaret Boone" had any interest in or right to the proceeds of Marie's policy and Tillie Boone was not Margaret's guardian. The plaintiff sought damages on the grounds that the PSERB breached contractual and fiduciary duties owed to Margaret and that the Board's conduct was negligent.
 
 
 4
 Prior to discovery, the PSERB moved to dismiss the action on the ground the court lacked subject matter jurisdiction because of the eleventh amendment. The district court, although it asserted that it weighed the factors we enunciated in Urbano v. Board of Managers of New Jersey State Prison, 415 F.2d 247 (3d Cir. 1969), Cert. denied, 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 128 (1970), appeared to have relied heavily on the similarity it found between the PSERB and the State Employees' Retirement Board considered in United Brokers Mtg. Co. v. Fidelity Philadelphia Trust Co., 26 Pa.Cmwlth. 260, 363 A.2d 817 (1976). It concluded that "(t)he statutory scheme establishing SERB (State Employees' Retirement Board) and the fund it administers is virtually identical in all material respects to the statutory scheme adopted for the PSERB and the fund here in question." 462 F.Supp. 825, 827 (E.D.Pa.1978). The district court granted the motion to dismiss. The plaintiff appeals.
 
 
 5
 The defendant, in support of its motion to dismiss, relied exclusively on the various provisions of the Public School Employees' Retirement Code ("the Code"). Plaintiff contends that an analysis of the Code reveals that the PSERB is not the Alter ego of the State for eleventh amendment purposes. Alternatively he argues that even assuming Arguendo that the Code does not affirmatively establish the PSERB's independence, it does not establish the contrary that it is the State's Alter ego. The Board responds that the Code establishes it as the State's Alter ego and also contends that the district court lacks jurisdiction under the diversity statute and principles of state sovereign immunity. Furthermore, it claims the action should be dismissed against the individual defendants because of official immunity. In the alternative, the Board argues, the abstention doctrine should be applied to prevent the district court from entertaining the claim. Because we conclude the district court should have developed a record beyond the skeletal language of the Code, we vacate the judgment and remand for further proceedings not inconsistent with this opinion.
 
 II.
 
 6
 The eleventh amendment has been interpreted to bar jurisdictionally the federal courts from entertaining suits for damages when a state is the real party in interest.[1] Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). It is not necessary that the state be named as a party, only that the named party is, in actuality, the Alter ego of the state.
 
 
 7
 In Urbano v. Board of Managers of New Jersey State Prison, supra 415 F.2d at 250-51, this court adopted the following criteria to determine whether an agency, commission or board which is related to the state should be regarded as the sovereign's Alter ego for eleventh amendment purposes.
 
 
 8
 * * * (L)ocal law and decisions defining the status and nature of the agency involved in its relation to the sovereign are factors to be considered, but only one of a number that are of significance.
 
 
 9
 Among the other factors, no one of which is conclusive, perhaps the most important is whether, in the event plaintiff prevails, the payment of the judgment will have to be made out of the state treasury; significant here also is whether the agency has the funds or the power to satisfy the judgment. Other relevant factors are whether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; the degree of autonomy over its operations; whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation, and whether the sovereign has immunized itself from responsibility for the agency's operations.
 
 
 10
 We again look to these nine factors for guidance in deciding whether the eleventh amendment precludes this suit from federal court.
 
 
 11
 A. How does local law define the status and nature of the PSERB and its relation to Pennsylvania? (Urbano Factor 1)
 
 
 12
 The question of whether an agency is the Alter ego of a state and thereby immune from federal jurisdiction under the eleventh amendment is a question of federal, not state, law. Harris v. Pennsylvania Turnpike Commission, 410 F.2d 1332, 1334 n. 1 (3d Cir. 1969), Cert. denied, 396 U.S. 1005, 90 S.Ct. 558, 24 L.Ed.2d 497 (1970). However, state decisions concerning the relationship of an agency to the state may be an important, and under certain circumstances a controlling factor in the determination of immunity. Skehan v. Board of Bloomsburg State College, 538 F.2d 53, 62 (3d Cir.) (en banc), Cert. denied, 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588 (1976).
 
 
 13
 In United Brokers Mtg. Co. v. Fidelity Philadelphia Trust Co., 26 Pa.Cmwlth. 260, 363 A.2d 817 (1976), the Commonwealth Court, sitting as a court of original jurisdiction, considered whether the PSERB and the State Employees' Retirement Board were so integrated with the State as to be immune from suit under principles of state sovereign immunity. The court analyzed the design of the State Employees' Retirement Board and concluded it was sufficiently integrated with the State so as to be shielded from liability under the doctrine of state sovereign immunity. It then turned to the PSERB and without analysis summarily concluded it was "analogous in relevant parts" to the State Employees' Retirement Board "so as to make further discussion superfluous." 26 Pa.Cmwlth. at 265, 363 A.2d at 820.[2]
 
 
 14
 As we have already noted, the district court in this case relied heavily on United Brokers in concluding the PSERB was an Alter ego of the State for eleventh amendment purposes. We believe this reliance was misplaced.[3]
 
 
 15
 In deciding the precise issue before us, United Brokers carries little weight for several reasons. First, although a federal court in a diversity suit may not ignore a decision of an intermediate state court as to matters of state law, it is not bound by it, if after analysis it believes the state's highest court would hold otherwise. This is especially true when the intermediate court is sitting as a court of original jurisdiction. National Surety Corp. v. Midland Bank, 551 F.2d 21, 29-30 (3d Cir. 1977). Second, the reasoning in United Brokers on this issue fails to consider in detail the relationship of the PSERB to the Commonwealth. Third, the opinion equates the State Employees' Retirement Board to the PSERB without considering their substantial differences. For eleventh amendment purposes, the most significant differences are that the funding for the State Employees' Retirement Board is derived almost exclusively from the state and a majority of its directors are state appointees. By contrast, it appears that a substantial portion of the PSERB's funding is derived from non-state sources and its board is not controlled by state appointees. These differences are significant.
 
 
 16
 B. Whether payment of the judgment will be made from the state treasury or from PSERB funds? (Urbano factors 2 and 3)
 
 
 17
 The most important factor in the determination of eleventh amendment immunity is whether judgment will have to be paid from the state treasury. Urbano, supra, 415 F.2d at 251. In Ford Motor Co. v. Department of Treasury, supra, 323 U.S. at 464, 65 S.Ct. at 350 (1945), the Court stated "when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit . . . ."
 
 
 18
 Under the Code, the PSERB fund comprises contributions by the Commonwealth,[4] the employer,[5] the employee,[6] and investment income. The fund is set apart in the state treasury from general state funds and is to be administered by the State Treasurer[7] at the direction of the Board.[8] The Treasurer is required to maintain a separate annuity reserve account for employee benefit funds and is not to commingle those funds with general PSERB funds.[9] The payment of benefits is specifically made an obligation of the State.[10] We do not believe the statutory language of the Code provides a sufficient basis for us to determine whether payment of the judgment in this case will be paid from the state treasury or from PSERB funds. Although we recognize that the exact percentage of the state contribution is not determinative of eleventh amendment immunity, the nature and size of those funds may be probative.
 
 
 19
 The PSERB asks us to take judicial notice of the State's $206,008,000 appropriation to the fund during the past year, as well as lesser contributions during the previous five years, as evidence that a judgment against it will be paid out of funds in the state treasury. The amount of appropriation, without evidence of the obligation it is intended to meet, is not dispositive. The State may contribute to the fund in several ways; as an employer of teachers at state colleges, by direct contributions to public school districts which in turn support the fund, by contributions which the state is statutorily obligated to make[11] and under the statutory provision by which it guarantees all obligations of the Board. For eleventh amendment purposes, the nature of the state's obligation to contribute may be more important than the size of the contribution.
 
 
 20
 In Mt. Healthy City School Board of Education v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Court considered the eleventh amendment immunity of a public school district which received "a significant amount of money from the State." Id. at 280, 97 S.Ct. at 573. The Court concluded that the school district was not an arm of the State and thus subject to suit under the eleventh amendment. Thus, the existence of even significant state financial support will not necessarily encase an entity with eleventh amendment immunity. Rather, a court should consider whether the state, in making the contribution, is acting in the role of the sovereign or is contributing in some other capacity.
 
 
 21
 Inquiry must also be made as to whether the PSERB has sufficient funds in its segregated account to meet Blake's claim or whether resort to general funds of the state treasury will be required.[12] In answering these questions the district court should have given appropriate weight to the opinion of the Pennsylvania Attorney General[13] describing the PSERB, wherein he stated:
 
 
 22
 While the Commonwealth meets its obligations by paying one-half of the employers' share for retirement benefits, nevertheless, once that obligation is satisfied and the money deposited in the Retirement Fund for investment and other statutory purposes, that money loses its identity as Commonwealth funds and becomes trusteed funds earmarked for a particular purpose.
 
 
 23
 Office of the Attorney General, Official Opinion No. 77-1, Penn.Bulletin, Vol. 7, No. 8, 503, 504 (1977).
 
 
 24
 The district court also should have considered whether the State Treasurer performs a ministerial function or whether he has some discretion in administering the fund. Furthermore, on remand it should ascertain whether the PSERB funds are subject to attachment in the event the State defaults in the payment of its general obligations. The court should also consider any other factors relevant to the character of the PSERB's funds. The issue of whether payment is from the state treasury or from PSERB funds, although important, is not dispositive. It is only meaningful in light of the agency's other attributes.
 
 
 25
 C. Whether the PSERB is performing a governmental or proprietary function? (Urbano factor 4)
 
 
 26
 The PSERB appears to function as a private life insurance company, collecting and investing money, and paying pensions and death benefits, rather than as a government entity. In describing PSERB's function, the Pennsylvania Attorney General noted:
 
 
 27
 it must be recognized that the PSERB administers a pension program which is not within the ordinary sphere of governmental activity. It acts in a primarily proprietary capacity for and on behalf of public school employees.
 
 
 28
 Official Opinion No. 77-1, Supra at 503-04. The Board is operated like a trust with its members acting as trustees for and on behalf of public school employees. Although the Code indicates the PSERB performs a proprietary function, other relevant factors ought to be assessed which indicate whether or not the PSERB performs government functions. For instance, the district court should determine whether the plan covers primarily state or non-state employees.[14]
 
 
 29
 D. Whether the PSERB has corporate powers and is autonomous? (Urbano factors 5, 6, 7)
 
 
 30
 These Urbano factors go to the ability of the PSERB to sue and be sued as well as exercise control over its own affairs. Although the PSERB has not been separately incorporated, the Code indicates that it "shall possess the power and privileges of a corporation."[15] Whether or not the Board does in fact operate like a separate corporation needs further examination on remand.
 
 
 31
 The degree of autonomy of the PSERB is crucial in the determination of eleventh amendment immunity. The primary purpose of the eleventh amendment is to assure that the federal courts do not interfere with a state's public policy and its administration of internal public affairs. In re Ayers, 123 U.S. 443, 505, 8 S.Ct. 164, 31 L.Ed. 216 (1887). Thus, the degree of autonomy of the PSERB will be extremely important in determining whether it is the Alter ego of the State under the eleventh amendment.
 
 
 32
 The PSERB is an eleven-member Board, including four state representatives. Pennsylvania's representatives are the State Treasurer, the Secretary of Education and two gubernatorial appointees. The other seven Board members are independent of the Commonwealth. Thus, the majority of the Board are not state representatives. The eleven members of the Board act as trustees of the fund and maintain independent investment control. The Attorney General's opinion on the PSERB declared that "the function of managing the Public School Employees' Retirement Fund is uncontrovertably one which the Board exercises independent of any control by the Governor's Office." Official Opinion No. 77-1, Supra, at 503. Facially, it does appear that the Board has a great deal of autonomy. On remand the district court should consider and carefully weigh any evidence which countervails and supports the PSERB's apparent autonomy.
 
 
 33
 E. Whether the agency's property is immune from state taxation? (Urbano factor 8)
 
 Section 8533 of the Code provides:
 
 34
 The right of a person to a member's annuity, a State annuity, or retirement allowance, to the return of contributions, any benefit or right accrued or accruing to any person under the provisions of this part, and the moneys in the fund are hereby exempt from any state or municipal tax . . . .
 
 
 35
 Blake contends that this exemption of benefits from state taxes is not relevant for eleventh amendment immunity purposes because private pension plans are also exempt from taxation under 72 Pa.C.S. § 7301(d)(iii).
 
 
 36
 It is not clear from the current state of the record whether the PSERB is exempt from other Pennsylvania taxes. On remand, the district court should ascertain whether the PSERB's property enjoys immunity from taxation in a manner not offered to analogous private insurers.
 
 
 37
 F. Whether the sovereign has immunized itself from responsibility for the PSERB's operations? (Urbano factor 9)
 
 
 38
 Section 8531 of the Code provides that "statutory interest charges payable, the maintenance of reserves in the fund, and the payment of all annuities and other benefits granted by the board" are "obligations of the Commonwealth." Thus, it is evident that Pennsylvania has ultimate responsibility for obligations of the PSERB.
 
 
 39
 However, we do not believe the inquiry is complete once it is determined that the State is the guarantor of the Board's debts. In Zeidner v. Wulforst, 197 F.Supp. 23 (E.D.N.Y.1961), the court considered the eleventh amendment immunity of the New York State Thruway Authority. It concluded that there was no eleventh amendment immunity because the only liability of the State was in guaranteeing the Authority's notes and bonds. In a sense, this factor reaches the same concerns as the second and third Urbano factors, whether payment will be made from the state treasury or from the PSERB's funds. As the Court stated in Edelman, supra, 415 U.S. at 668, 94 S.Ct. 1347, an ancillary effect on the state treasury will not create an eleventh amendment jurisdictional bar. Therefore, we deem it necessary that the record disclose whether the State has ever had to spend its funds under this general guarantee and whether the PSERB can meet the judgment in this case from its own funds.
 
 
 40
 The above analysis under Urbano indicates that the district court should have permitted discovery and held a hearing before ruling on the issue of eleventh amendment immunity. Although we recognize in certain instances summary disposition of the eleventh amendment issue is possible, in a close case such as this, evidence beyond the mere statutory language is required. We therefore vacate the district court's holding of eleventh amendment immunity and remand for further proceedings not inconsistent with this opinion.
 
 III.
 
 41
 The PSERB also questions the ability of the district court to hear this case under the statutory grant of diversity jurisdiction. It relies on Illinois v. City of Milwaukee, 406 U.S. 91, 97 n. 1, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972), where the Court held a suit against a state is not a suit between citizens of different states for purposes of diversity jurisdiction. The PSERB argues that since it is a state agency it can not be sued on the basis of diversity jurisdiction in federal court.
 
 
 42
 The federal courts cannot entertain a suit in diversity jurisdiction against a state or its Alter ego. Moor v. County of Alameda, 411 U.S. 693, 720, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); Krisel v. Duran, 386 F.2d 179, 181 (2d Cir. 1967). Thus, the question of diversity jurisdiction in this case parallels the eleventh amendment question; whether the PSERB is the Alter ego of the state.[16] The district court's determination of the Board's alter ego status under the eleventh amendment will also determine the availability of diversity jurisdiction.
 
 IV.
 
 43
 The PSERB contends that it is immune from suit because of state sovereign immunity under Pennsylvania law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), makes it clear that the district court is obliged to apply the law of the state as pronounced by the state's Supreme Court. As we have already indicated Supra, where the State Supreme Court has not ruled on the precise issue, the federal court should ordinarily follow related state precedents.
 
 
 44
 The Pennsylvania Supreme Court has not determined whether the PSERB is entitled to state sovereign immunity.[17] In reversing its prior decisions holding that the Pennsylvania Turnpike Commission shares the immunity of the Commonwealth, Specter v. Commonwealth, 462 Pa. 474, 341 A.2d 481 (1975), held that the question of state sovereign immunity is no longer resolved simply by the governmental nature of an entity but upon whether it is or is not part of the Commonwealth, as that term is used in the Pennsylvania Constitution's establishment of immunity. Id. 341 A.2d at 483. In relevant aspects this inquiry is analogous to the eleventh amendment Alter ego test.[18] Harris v. Pennsylvania Turnpike Commission, supra, 410 F.2d at 1333-34 n. 1. Therefore, the court's determination of the eleventh amendment issue will resolve the question of state sovereign immunity.
 
 
 45
 The PSERB also asks this court to dismiss the case against the individual defendants under the doctrine of official immunity. We find it unnecessary to explore the bounds of official immunity in this case because the pleadings and briefs make it clear that the individual defendants are only nominal parties and damages are sought exclusively from the PSERB's funds. Any immunity enjoyed by the PSERB will thus bar the plaintiff's right to recovery and make the determination of the official immunity to the individual defendants irrelevant.[19] See Ford Motor Co. v. Department of Treasury, supra, 323 U.S. at 464, 65 S.Ct. 347.
 
 V.
 
 46
 As a final matter, the PSERB asks this court to dismiss Blake's claim under the abstention doctrine. Although it was not raised in the district court, abstention may be raised by this court Sua sponte. Bellotti v. Baird, 428 U.S. 132, 143-44 n. 10, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976). However, "(a) bstention from the exercise of federal jurisdiction is the exception, not the rule." Colorado River Water Conservation District v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1975). The PSERB relies on Urbano, where this court found no eleventh amendment immunity but applied the abstention doctrine to avoid needless conflict with New Jersey's administration of its own affairs and to permit the New Jersey courts to resolve an unsettled question of state law.
 
 
 47
 Renunciation of the duty of a federal district court to decide a controversy properly before it under the abstention doctrine is justifiable only in exceptional circumstances. Abstention is proper where a state determination of pertinent state laws may moot a federal constitutional issue, where there are difficult questions of state law bearing on policy issues of substantial public import which transcend the case at bar, and where, absent bad faith, harassment or a patently invalid state statute, the doctrine is invoked to restrain state criminal proceedings. Colorado River Water Conservation District v. United States, 424 U.S. at 814-16, 96 S.Ct. 1236. The PSERB claims that abstention is proper in this case because federal jurisdiction will interfere with an established procedure to handle disputes over benefit payments and the state law on the issue is unsettled.
 
 
 48
 We do not believe this case calls for abstention by the federal courts. It appears that Pennsylvania has no established procedure to handle claims against the PSERB. Although at oral argument the PSERB indicated an administrative remedy was available, it appears such a remedy is only optional and has never been pursued. Thus, federal jurisdiction will not interfere with an established state procedure. Furthermore, this case does not involve unsettled questions of state law bearing on substantial policy issues of public import but classic questions of contracts, negligence and fiduciary duties.
 
 
 49
 In Urbano the court applied the abstention doctrine in a suit involving a trust fund for prisoners. The court said "(i)t is clear that New Jersey would have an overriding interest in the development of its own policy regarding the establishment of trust funds for inmates of prisons and other state institutions." 415 F.2d at 257. We do not believe that Pennsylvania has the same sort of interest in this case. See Baltimore Bank for Cooperatives v. Farmers Cheese Cooperative, 583 F.2d 104, 111 (3d Cir. 1978).
 
 VI.
 
 50
 We conclude that it is not clear from this record whether the PSERB is the Alter ego of Pennsylvania for purposes of the eleventh amendment, diversity jurisdiction and state sovereign immunity. In a close case such as this, involving significant issues of federal jurisdiction and contractual rights of the parties, it is important for the district court to go beyond the statutory language and examine the operational structure of the agency and its relationship to the Commonwealth. The judgment of the district court will therefore be vacated and the case remanded for further proceedings not inconsistent with this opinion. Costs taxed against appellees.
 
 
 
 [1]
 The eleventh amendment provides:
 The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 
 
 [2]
 The court also, in a single footnote summarized Some of the characteristics of the PSERB
 
 
 [24]
 Pa.C.S. § 8501(a) provides for an independent administrative board of eleven members including the Secretary of Education, State Treasurer, appointees of the Governor, and others. 24 Pa.C.S. § 8501(e) gives the board powers and privileges of a corporation, and appoints the Attorney General, legal advisor. 24 Pa.C.S. § 8531 makes the board's debt obligations of the Commonwealth. 24 Pa.C.S. § 8521(b) provides for operating appropriations from the General Fund
 
 
 [26]
 Pa.Cmwlth. at 265, n. 3; 363 A.2d at 820
 
 
 [3]
 The district court also relied on Flesch v. Eastern Pa. Psychiatric Inst., 434 F.Supp. 963, 977 (E.D.Pa.1977), where the court held the State Employees' Retirement Board was "a separate arm of the state entitled to Eleventh amendment protection." Because of the many differences between the PSERB and the State Employees' Retirement Board, we believe reliance on Flesch was also misplaced
 
 
 [4]
 24 Pa.C.S. § 8326
 
 
 [5]
 24 Pa.C.S. § 8327
 
 
 [6]
 24 Pa.C.S. §§ 8321-324
 
 
 [7]
 24 Pa.C.S. § 8521(c)
 
 
 [8]
 24 Pa.C.S. § 8522
 
 
 [9]
 24 Pa.C.S. §§ 8524, 8525
 
 
 [10]
 24 Pa.C.S. § 8531
 
 
 [11]
 24 Pa.C.S. § 8326
 
 
 [12]
 In determining whether the judgment will be paid by PSERB or general funds of the state treasury, the court should examine whether title to the funds is in the State or in the Board. In Aerojet-General Corp. v. Askew, 453 F.2d 819 (5th Cir. 1971), Cert. denied, 409 U.S. 892, 93 S.Ct. 110, 34 L.Ed.2d 149 (1972), the court concluded that the Florida State Board of Education and the State Board of Trustees of the Internal Improvement Trust Fund were not immune from suit under the eleventh amendment principally because both boards held title to the property in their own names
 
 
 [13]
 In re Jackson, 268 F.Supp. 434, 443 (E.D.Mo.), Aff'd sub nom., Zuke v. Mercantile Trust Co. Nat'l Ass., 385 F.2d 775 (8th Cir. 1967), indicates an attorney general's opinion "is entitled to great respect and Should ordinarily be followed where judicial decisions construing the statute are lacking."
 
 
 [14]
 We are aware that employees of the state, such as employees of the Department of Education and state colleges, as well as non-state employees, such as local school teachers, Board of Education members, and perhaps others, contribute to the plan. It would be helpful to ascertain the numbers and percentages of contributions by each group. It would also be helpful to ascertain whether participation is voluntary or mandatory
 
 
 [15]
 24 Pa.C.S. § 8501(e)
 
 
 [16]
 Chief Judge Seitz discussed the relationship between eleventh amendment immunity and diversity jurisdiction in his concurring opinion in Ramada Inns, Inc. v. Rosemount Memorial Park Ass'n, 598 F.2d 1303, 1309 (3d Cir. 1979)
 It is surprising, however, given the divergent principles underlying the two inquiries, that the only distinction between them to have received judicial recognition to date is that the state may waive its eleventh amendment sovereign immunity but is unable to waive the lack of subject matter jurisdiction if diversity does not exist in a given suit. See State Highway Commission of Wyoming v. Utah Construction Co., 278 U.S. 194, 199-200, 49 S.Ct. 104, 73 L.Ed. 262 (1929); Harris v. Pennsylvania Turnpike Commission, 410 F.2d 1332, 1333 n. 1 (3d Cir. 1969).
 Since eleventh amendment waiver is not at issue in this case, the eleventh amendment and diversity issues involve the same inquiry.
 
 
 [17]
 In United Brokers, supra, the commonwealth court, sitting as a court of original jurisdiction, held that the PSERB was entitled to state sovereign immunity. In Skehan v. Board of Trustees of Bloomsburg State College, supra, 538 F.2d at 62, this court chose to follow the commonwealth court's decision in Brungard v. Hartman, 12 Pa.Cmwlth. 477, 315 A.2d 913 (1974), holding that a state college was entitled to state sovereign immunity. In Brungard, it was clear that the state-owned and state-operated state college was the Alter ego of the state for sovereign immunity purposes. It is less clear whether the PSERB is the Alter ego of the state. We do not read Skehan as altering Erie so as to require this court to follow the commonwealth court's pronouncement of state law. After Skehan this court reaffirmed its view that the federal courts are not bound by a state intermediate court in National Surety Corp. v. Midland Bank, 551 F.2d 21, 29-30 (3d Cir. 1977). We decline to view United Brokers as controlling for the reasons stated at 722-723, Supra
 
 
 [18]
 It is also possible that the State waived its sovereign immunity in this case by admitting that Blake may present her claim in an administrative forum. However, it is unnecessary for the district court to reach the question of waiver because its decision on the Alter ego status of the PSERB under the eleventh amendment will control its ability to hear the case under principles of state sovereign immunity
 
 
 [19]
 We would be faced with an entirely different issue if Blake had attempted to sue the individual defendants to reach their personal funds