**In re Sherri L. LYONS, Debtor.**

**Robert M. MAGILL, Trustee, Plaintiff/Appellee,**

v.

**Sherri L. LYONS, Debtor, and State Employees' Retirement System of Illinois, Defendants/Appellants.**

**Nos. 90–3038, 90–3039.**

United States District Court, C.D. Illinois, Springfield Division.

Aug. 28, 1990.

636

Mariann Pogge, Springfield, Ill., for plaintiff/appellee.

R. Stephen Scott, John Brunsman, Asst. Atty. Gen., Springfield, Ill., for defendants/appellants.

## OPINION

RICHARD MILLS, District Judge:

This Court has before it, pursuant to 28 U.S.C. § 158(a), two appeals from a decision of the United States Bankruptcy Court. Both appeals involve the same parties, facts, and issues. Thus, in the interest of judicial economy the Court will consolidate the cases for purposes of appeal.

Although we find that the bankruptcy court was correct in holding that the Eleventh Amendment does not bar turnover of the Debtor's interest in the State Employees' Retirement System and that those funds are nonexempt property of the estate, we find that the bankruptcy court erred in ordering turnover of the funds. The Debtor has no present right to distribution of the funds. The Trustee succeeds to the Debtor's rights. Therefore, the Trustee has no present right to distribution of the funds.

### I—Facts

The parties have stipulated to the material facts. On August 19, 1988, Debtor Sherri L. Lyons filed a voluntary petition for relief under Chapter Seven of the Bankruptcy Code, seeking exemption of contributions made to the State Employees' Retirement System (SERS). At that time, the Debtor was employed by the Illinois Department of Revenue, and she continued to be so employed when this cause came before the bankruptcy court.

As a state employee, the Debtor is subject to SERS. Ill.Rev.Stat., ch. 108½, ¶¶ 14–101 to 14–151. Participation in SERS is mandatory. Ill.Rev.Stat., ch. 108½, ¶¶ 14–103.05, 14–144. Employee contributions are made by wage deduction pursuant to a scheme set out at ¶ 14–133. In addition to the mandatory contributions, SERS is funded by annual state legislative appropriations and interest earnings upon accumulated sums. Employees are allowed to withdraw their contributions only upon termination of employment, retirement, or disability. Ill.Rev.Stat., ch. 108½, ¶¶ 14–103.26, 14–107, 14–123, 14–124, 14–130. SERS has no provision for withdrawal of any contributions for hardship, loans, or payments to creditors. Furthermore, SERS funds are not subject to execution, garnishment, or attachment. Ill.Rev.Stat., ch. 108½, ¶ 14–147.

SERS does not maintain a separate fund for each employee's mandatory contributions. In the event of the severance of an employee's employment due to resignation, discharge or dismissal, SERS must calculate the amount of the employee's contributions in order to determine the appropriate refund.

Retirement annuities are made available to state employees after eight years of creditable service upon obtaining the age of 60, or after 35 years of creditable service at any age. The amount of the retirement annuity is not related in any way to the employee's mandatory contributions. It represents a percentage of the employee's final average compensation for periods of service with the State of Illinois.

The Debtor made mandatory contributions to SERS for nine years and ten months. Through the date of her petition her contributions totalled $6,076.63.

On January 4, 1989, the Trustee filed a complaint in the bankruptcy court, seeking an order pursuant to 11 U.S.C. § 542 directing SERS to turn over the Debtor's employee contributions. The bankruptcy court handed down its opinion and order on January 26, 1990, in which it found that the Eleventh Amendment does not bar turnover of the funds in SERS, that the Debtor's contributions are nonexempt property of the bankruptcy estate under 11 U.S.C. § 541(c)(1) and that the Trustee is entitled to an immediate turnover of the Debtor's SERS contributions. 114 B.R. 572. SERS and the Debtor filed separate notices of appeal.

### II—Issues

The parties present four issues for this Court's consideration. *First,* whether the immunity conferred on the State of Illinois and its agencies by the Eleventh Amendment prohibited the bankruptcy court's turnover of SERS funds to the Trustee. *Second,* whether the SERS contributions constitute property of the bankruptcy estate under 11 U.S.C. § 541(c)(1). *Third,* if the contributions do constitute property of the bankruptcy estate, whether they are exempt from the estate under Ill.Rev.Stat., ch. 108½, ¶ 14–147 (the SERS exemption provision) or Ill.Rev.Stat., ch. 110, ¶ 12–704 (the Illinois Code of Civil Procedure garnishment exemption). *Fourth,* if the contributions do constitute property of the bankruptcy estate, whether the Trustee may compel their turnover, since the Debtor has no present right to demand distribution.

### III—Analysis

As noted above, the parties stipulated to the facts. The bankruptcy court's opinion and order, therefore, are based on the court's interpretation of the applicable law. As such, we review the bankruptcy court's decision *de novo. See In re American Mariner Industries, Inc.,* 734 F.2d 426, 429 (9th Cir.1984). We now turn to the issues presented by this appeal.

### A. Eleventh Amendment Immunity?

■ Appellants argue that the bankruptcy court erred in determining that the Eleventh Amendment does not bar the turnover of SERS funds to the Trustee.

In *Hoffman v. Connecticut Income Maintenance*, —— U.S. ——, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), the Supreme Court held that § 106(c) of the Bankruptcy Code does not abrogate the Eleventh Amendment immunity of the states. Therefore, the Court held that the trustee's § 542(b) turnover proceeding against the Connecticut Department of Income Maintenance and § 547(b) preference action against the Connecticut Department of Revenue Services were barred by the Eleventh Amendment. Citing *Hoffman*, SERS unsuccessfully argued before the bankruptcy court that the Eleventh Amendment bars the turnover action in the instant case as well.

The bankruptcy court, in rejecting SERS's argument, determined that the Eleventh Amendment did not bar the turnover action because SERS was not an "alter ego" of the state, a status necessary to trigger Eleventh Amendment immunity. *See Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979). Citing *Blake v. Kline*, 612 F.2d 718 (3d Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980) and *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655 (3d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 148, 107 L.Ed.2d 107 (1989), the bankruptcy court stated that:

> The most important factor in determining the applicability of the Eleventh Amendment is whether the judgment will have to be paid from the state treasury. In this case, the trustee is not seeking the turnover of state contributions to the fund; the trustee only seeks the turnover of the debtor's contributions to the fund.

The bankruptcy court concluded that since the satisfaction of a turnover order would come from SERS funds, and not from the general state treasury, Eleventh Amendment immunity did not apply to SERS.

The *Fitchik* and *Blake* courts used a three part test, distilled from the nine part test of *Urbano v. Board of Managers of New Jersey State Prison*, 415 F.2d 247 (3d Cir.1969), *cert. denied*, 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970), to determine whether a state agency was the alter ego of a state for purposes of triggering the Eleventh Amendment:

> (1) Whether the money that would pay the judgment would come from the state (this includes three of the *Urbano* factors—whether payment will come from the state's treasury, whether the agency has the money to satisfy the judgment, and whether the sovereign has immunized itself from responsibility for the agency's debts);
>
> (2) the status of the agency under state law (this includes four factors—how state law treats the agency generally, whether the entity is separately incorporated, whether the agency can sue or be sued in its own right, and whether it is immune from state taxation); and
>
> (3) what degree of autonomy the agency has.

*Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d at 659.

An analysis of these factors leads us to the conclusion that SERS is not an alter ego of the State of Illinois.

■ Consideration of the first factor convinces us that SERS is not an alter ego of the state. As noted above, SERS is funded by contributions from employees and the state. Ill.Rev.Stat., ch. 108½, ¶¶ 14–131, 14–133. These funds are pooled together and kept in a separate account within the state treasury. Ill.Rev.Stat., ch. 108½, ¶ 14–132. SERS argues that this "commingling" of state and employee funds tilts factor one in its favor. We must disagree. The mere fact that an agency derives some of its income from the state does not mean that it is entitled to partake of the state's immunity. *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d at 660; *Blake v. Kline*, 612 F.2d at 723.

What is [more] significant is whether the money that pays the fine [or, in this context, the money representing the employee's fund contributions] will come from the state treasury rather than the agency's funds or (alternatively) whether the state must reimburse the agency and thus effectively pay the debt.

*Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d at 660.

Under this line of inquiry, factor one militates toward a finding that SERS is not an alter ego of the state. First, the money the trustee seeks would come from the SERS fund, a fund which is kept separate from the general treasury fund. *See* Ill. Rev.Stat., ch. 108½, ¶ 14–132. Furthermore, as the bankruptcy court correctly stated in its opinion, the Trustee seeks only the Debtor's contributions to the fund, and not the state's. Finally, as stated above, the fact that some of the SERS funds come from state contributions which are then mixed in with employee contributions does not change the analysis.

SERS argues that under the *Fitchik* inquiry laid out above, factor one is in its favor because the State of Illinois is ultimately responsible for the expenses of SERS. In support of this argument, SERS cites Ill.Rev.Stat., ch. 108½, ¶ 14–132, which provides in relevant part:

> Obligations of state. The payment of the required department contributions, all allowances, annuities, benefits granted under this Article, and all expenses of administration of the system are obligations of the State of Illinois to the extent specified in this article....

In *Fitchik*, the court found against the New Jersey Transit Corporation on factor one because, *inter alia*, the state was under no obligation to pay the agency's debts. SERS argues that ¶ 14–132, necessitates a finding in the opposite direction. Again, we must disagree.

The inquiry is not complete once it is determined that the State is the guarantor of payment of benefits by SERS. *Blake v. Kline*, 612 F.2d at 725. Instead, because a mere ancillary effect on the state treasury will not give an agency Eleventh Amend-

ment immunity, *see Edelman v. Jordan*, 415 U.S. 651, 668, 94 S.Ct. 1347, 1358, 39 L.Ed.2d 662 (1974), the *Blake* court determined that it was "necessary that the record disclose whether the state has ever had to spend its own funds under this general guarantee and whether the [agency] can meet the judgment in this case from its own funds." *Blake v. Kline*, 612 F.2d at 726.

The record in this case does not disclose whether the State of Illinois has ever had to spend its funds under its general guarantee nor is there any specific evidence that SERS has the funds to pay the judgment in this case. The Trustee, however, does not seek state contributions or even the interest accrued on the Debtor's contributions. The Trustee seeks only the Debtor employee's contributions. SERS admits that at present it is 65% funded. The amount of the turnover is only $6,076.63. Presumably, SERS can pay this judgment without having to invoke the State's guarantee.

Although the second and third factors, the status of the agency under state law and the degree of autonomy the agency has, may slightly favor SERS, they are insufficient to convince the Court that SERS is the alter ego of the State of Illinois. The most important factor is whether the judgment will have to be satisfied out of funds in the state treasury. We conclude that the judgment will not have to be satisfied from such funds. Thus, the Eleventh Amendment does not bar turnover of the funds.

### B. Contributions Part of Estate?

The second issue before this Court is whether the bankruptcy court erred in determining that the SERS contributions are part of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1). Appellants contend that these contributions should be excluded from the bankruptcy estate pursuant to the exemption provision of § 541(c)(2).

■ Section 541(a)(1) provides that a debtor's estate is "comprised ... of all legal or equitable interests of the debtor in property as of the commencement of the

case." 11 U.S.C. § 541(a)(1). Generally, property becomes part of the bankruptcy estate even if there are restrictions placed on its transfer. 11 U.S.C. § 541(c)(1). Section 541(c)(2), however, creates an exception to this general rule, providing that a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable." 11 U.S.C. § 541(c)(2). Appellants contend that the Illinois Pension Code sections dealing with SERS contain the requisite "restriction on the transfer of a beneficial interest" that is "enforceable under applicable non-bankruptcy law" and thus, the SERS contributions are not property of the bankruptcy estate.

■ Although there is some disagreement, the majority of cases appear to have interpreted the section's reference to "applicable non-bankruptcy law" as applying only to state law concerning spendthrift trusts. *In re Lichstrahl*, 750 F.2d 1488, 1490 (11th Cir.1985); *In re Daniel*, 771 F.2d 1352, 1360 (9th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *In re Graham*, 726 F.2d 1268 (8th Cir.1984); *In re Goff*, 706 F.2d 574 (5th Cir.1983); *In re LaFata*, 41 B.R. 842 (Bankr.E.D.Mich.1984); *In re Berndt*, 34 B.R. 515 (Bankr.N.D.Ind.1983); *In re Kelley*, 31 B.R. 786 (Bankr.N.D.Ohio 1983); *In re DiPiazza*, 29 B.R. 916 (Bankr.N.D.Ill. 1983). These interpretations are in accord with the legislative history of § 541(c)(2), which states that § 541(c)(2) intended to preserve "restrictions on transfer of a *spendthrift trust* to the extent that the restriction is enforceable under applicable non-bankruptcy law." H.R.Rep. No. 595, 95th Cong., 2d Sess. 369, reprinted in 1978 U.S.Code Cong. & Ad.News, 5787, 5963, 6325 (emphasis added). Therefore, we must reject Appellants' argument that § 541(c)(2) also protects pension plans which are not considered spendthrift trusts under state law.

Having stated this, the Court must address the question of whether SERS qualifies as a spendthrift trust under Illinois

law, and thus enjoys exclusion from the estate under § 541(c)(2).

■ Illinois law has long recognized the validity of spendthrift trusts. *See, Wagner v. Wagner*, 244 Ill. 101, 91 N.E. 66 (1910); *Newcomb v. Masters*, 287 Ill. 26, 122 N.E. 85 (1919); *Geiger v. Geer*, 395 Ill. 367, 69 N.E.2d 848 (1946). To qualify as a spendthrift trust under Illinois law, the beneficiary must show that he cannot alienate his interest in the trust res, and that he does not possess exclusive and effective control over termination or distribution of the trust. *In re Dagnall*, 78 B.R. 531, 534 (Bankr.C.D.Ill.1987); *In re Silldorff*, 96 B.R. 859, 864 (C.D.Ill.1989). Moreover, the settlor of a spendthrift trust may not establish the trust for his own benefit. *In re Silldorff*, 96 B.R. at 864.

In support of their argument that SERS is a spendthrift trust under the above standards, Appellants cite Ill.Rev.Stat., ch. 108½, ¶ 14–147 which provides that all benefits under SERS are "unassignable and shall not be subject to execution, garnishment, or attachment...." Appellants also cite Ill.Rev.Stat., ch. 108½, ¶ 14–130 which provides that employees can receive a refund of contributions only upon "withdrawal" from SERS, which is defined in ¶ 14–103.26 as "severance of employment of a member as an employee of the State or of all Departments, by resignation, discharge, dismissal or layoff."

■ A state employee participating in SERS may reach his contributions by voluntarily terminating his employment with the state. Today, we join those courts that have held that this alienation ability constitutes sufficient control to disqualify a pension plan as a spendthrift trust. *See In re Dagnall*, 78 B.R. 531, 534 (Bankr.C.D.Ill. 1987); *In re Sundeen*, 62 B.R. 619, 620 (Bankr.C.D.Ill.1986); *In re Silldorff*, 96 B.R. at 864; *In re Werner*, 31 B.R. 418, 421 (Bankr.D.Minn.1983); *In re Swanson*, 873 F.2d 1121 (8th Cir.1989). *But see, In re Perkins*, 902 F.2d 1254, 1257 n. 2 (7th Cir.1990) (collecting cases opposed).

■ "The power of a beneficiary to compel total distribution of the corpus is anti-

thetical to the nature of the spendthrift trust. [I]n a true spendthrift trust there is no possible voluntary action a beneficiary can take which would initiate an early termination of the trust or invasion of the corpus." *In re Silldorff,* 96 B.R. at 864. A state employee has too much power over his interest in SERS for the plan to qualify as a spendthrift trust. Furthermore, the historic purpose of a spendthrift trust under Illinois law is to provide a fund for the maintenance of another and not for the settlor's own benefit. *In re Dipiazza,* 29 B.R. 916, 918 (Bankr.N.D.Ill.1983). This Court's position is in keeping with that purpose.

### C. Exemptions from Estate?

 SERS and the Debtor argue that the Debtor's contributions to SERS are exempt under Ill.Rev.Stat., ch. 108½, ¶ 14–147. At the time the Debtor filed the petition, that statute provided:

> All annuities and other benefits payable under this Article and all accumulated credits of employees in this system shall be unassignable and shall not be subject to execution, garnishment or attachment . . .[1]

The bankruptcy court relied on its decision in *In re Bartlett,* No. 87–71946, 1988 WL 212057 (Bankr.C.D.Ill. June 30, 1988), in holding that ¶ 14–147 does not apply to employee contributions to SERS.

 In *Bartlett,* the bankruptcy court noted that the SERS exemption provision exempted only "annuities", "other benefits payable", and "accumulated credits." The court determined that "annuities" and "other benefits payable" were clearly inapplicable and thus focused on "accumulated credits". The court compared numerous sections of the pension code and concluded:

> the term [credits] is used throughout the pension code to refer to the length of service upon which the amount of bene-

fits are [sic] based and activities outside of actual state service which are credited as service. *See,* Sec. 14–103.15, 14–103.-16, 14–104, 14–104.1, 14–104.2, 14–104.4, 14–104.5, 14–105, 14–105.1, 14–105.2, 14–105.3, 14–105.6, 14–127 and 14–130. The term credit does not refer to employee contributions to the system.

*In re Bartlett,* No. 87–71946, slip op. at 6 (Bankr.C.D.Ill. June 30, 1988).

 We agree with the reasoning of the bankruptcy court. Nothing in the State Employees' Retirement System suggests that employee contributions are exempt. In fact, the plain wording of the statute cuts the opposite way. Moreover, the statute dealing with exemptions for the Teachers' Retirement System (TRS) specifically exempts a teacher's contributions to the retirement system. Ill.Rev.Stat., ch. 108½, ¶ 16–190. The fact that employee contributions are specifically exempted in relation to TRS but not in relation to SERS convinces us that the Illinois legislature did not intend to exempt employee contributions to SERS.

 Appellants also argue that the Debtor's contributions are exempt pursuant to Ill.Rev.Stat., ch. 110, ¶ 12–704. That statute provides that:

> Benefits and refunds payable by pension or retirement funds or systems and any assets of employees held by such funds or systems, and any monies an employee is required to pay to such funds or system are exempt and are not subject to garnishment under part 7 of Article XII of this Act.

Clearly, as the bankruptcy court held, this statute is inapplicable to this bankruptcy turnover proceeding. The quoted statute confines its pension exemption to garnishment proceedings. Because this is not a garnishment proceeding, the statute has no effect.

---

1. During the pendency of the proceedings before the bankruptcy court, the Illinois General Assembly amended ¶ 14–147 to specifically include contributions of employees to SERS. The General Assembly also included a provision stating that the amendment was intended to be a clarification of existing law. The bankruptcy court held that the amendment did not apply to the debtor's petition because it was filed prior to the effective date of the amended statute. Further, the court dismissed the "clarification of existing law" as an attempt by the General Assembly at retroactive legislation. The Court agrees with these conclusions.

## D. Compel Turnover?

The final issue is whether the bankruptcy court could compel turnover of the Debtor's contributions to SERS despite the fact that the Debtor had no present right to receive the contributions absent termination of her employment.

The parties have stipulated that the Debtor, Sherri Lyons, was employed by the State of Illinois on the date of filing and was still employed by the State when the bankruptcy court issued its opinion. State employees are permitted to withdraw their individual contributions to SERS only in the event of retirement, disability, or termination of employment. SERS has no provision for withdrawal of any contributions for hardship, loans, or payments to creditors. Thus, because the Debtor remains employed by the State, she has no present right to receive a return of her contributions.

The bankruptcy court found itself faced with the following conundrum: If the Debtor's contributions to SERS are property of the estate and are not exempt, how can the Trustee recover the funds for the benefit of the estate if the Trustee has only the interest that the Debtor possessed as of the date of filing. On the other hand, the bankruptcy court found, allowing the Debtor to quit her job and receive the refund of her contributions to SERS, free and clear of all claims and other interests, would result in a windfall.

The court found the solution in 11 U.S.C. § 105 which provides that "[t]he court may issue any order, process, or judgment that is necessary to carry out the provisions of this title." The court also relied on *In re Swanson*, 873 F.2d 1121 (8th Cir.1989) and *In re Kincaid*, 96 B.R. 1014 (9th Cir. BAP 1989). Each of these cases affirmed the bankruptcy court's order compelling a pension plan to turn over the debtor's interest in the plan. *Neither court, however, discussed the basis for the turnover.*

We hold that the bankruptcy court erred in ordering the turnover of the funds held in SERS. Under 11 U.S.C. § 541, the trustee succeeds only to the title and rights in property that the Debtor had

and he takes the property subject to the same restrictions that existed at the time the Debtor filed the petition. *Calvert v. Bongards Creameries (In re Schauer)*, 835 F.2d 1222, 1225 (8th Cir.1987). A Debtor's rights may not be expanded beyond what they were at the commencement of the case. Thus, the Trustee's interest in SERS must be limited to the same extent as the Debtor's interest. The Debtor has no present right of distribution and consequently, neither does the Trustee.

Our holding is not without support in the case law. In *In re Silldorff*, 96 B.R. 859 (C.D.Ill.1989), the district court considered the debtor's interest in a stock ownership plan. The debtor could obtain a distribution from the plan only upon termination of her employment or if she could prove extreme financial hardship. The court held that where the debtor was not entitled to a present distribution at the time of the petition, the bankruptcy trustee was not entitled to a distribution.

*In re Loe*, 83 B.R. 641 (Bankr.D.Minn. 1988) reached a similar result. That case involved the debtor's interest in an ERISA pension plan. The debtor could obtain a distribution from the plan only upon death, disability, retirement, or other termination of employment. Although the court found that the debtor's interest in the plan was property of the estate, the court also found that the trustee has no immediate right of turnover of the plan assets.

In this case, the Debtor can withdraw her contributions to SERS only upon termination of employment, retirement, or disability. At present, she has no right to a distribution of those funds. Because the Trustee takes only what the Debtor had, neither does the trustee have a present right to the SERS funds.

## IV. Conclusion

We hold that the bankruptcy court was correct in concluding that the Eleventh Amendment does not bar turnover of the Debtor's interest in the State Employees' Retirement System and that those funds are nonexempt property of the bankruptcy estate. We further hold, however, that the

court erred in ordering turnover of those funds because the Debtor has no present right to distribution.

*Ergo,* for the reasons discussed above, the decision of the bankruptcy court is REVERSED.