928 F.2d 404
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James W. CHILDS, Plaintiff-Appellant,
v.
Margery B. KOOSED, Richard L. Aynes, Isaac C. Hunt, William
D. Rich, Frank Marini, and William V. Muse,
Defendants-Appellees.
 No. 90-3449.
 United States Court of Appeals, Sixth Circuit.
 March 13, 1991.
 
 On Appeal from the United States District Court for the Northern District of Ohio, 89-06717, Batchelder, J.
 N.D.Ohio
 AFFIRMED.
 Before KENNEDY and ALAN E. NORRIS, Circuit Judges; and JOINER, Senior District Judge.*
 PER CURIAM:
 
 
 1
 Plaintiff, James W. Childs, brought this civil rights action alleging constitutional violations as a result of his denial of tenure and termination of employment at the University of Akron School of Law. The District Court dismissed the suit, holding that the plaintiff had sued the defendants in their official capacity, and that the suit was therefore barred by the eleventh amendment. The plaintiff appeals. Because we find that the defendants were sued in their official capacities, we AFFIRM the District Court's dismissal.
 
 
 2
 The plaintiff is a former non-tenured University of Akron Law School (University) professor. He brought this suit against Margery B. Koosed, law professor, Richard L. Aynes, law professor and associate dean, Isaac C. Hunt, law school dean, William D. Rich, law professor, Frank Marini, provost of the University, and William V. Muse, president of the University (defendants). The plaintiff brought the suit, claiming violations of 42 U.S.C. Secs. 1983 and 1985. He also included various pendant state law claims. The plaintiff alleges violations of his due process and first amendment rights which occurred as a result of circumstances surrounding his being denied tenure and the subsequent termination of his employment.
 
 
 3
 The plaintiff was a non-tenured professor at the law school from August, 1983 until May, 1989. In December, 1987 the plaintiff came up for tenure review by the Limited Law Faculty (LLF), a committee of tenured law professors which makes an initial recommendation on whether to grant tenure. The next step in the tenure process involves a recommendation by the dean of the law school. If the dean agrees with the LLF, the recommendations are passed on to the University Provost and the University President, who then makes a recommendation to the Board of Trustees. If, however, the dean disagrees with the LLF, the committee and the tenure candidate are notified, and the candidate is given a chance to respond. Both recommendations are then forwarded to the provost and president. The Board of Trustees makes the final tenure decisions.
 
 
 4
 In December, 1987 the LLF recommended that the plaintiff be granted tenure. Before the dean made his own recommendation, several students complained that the plaintiff had made inappropriate and offensive comments in his family law course. The plaintiff, who was initially hired to teach tax law, taught a family law course for the first time in the fall of 1987. The plaintiff was informed of the complaints in March of 1988. Following an investigation, the dean informed the plaintiff and the LLF that his recommendation on the plaintiff's tenure was contrary to the LLF's. The plaintiff initially refused to agree to another probationary contract, and, on April 27, 1988, the Board of Trustees issued a terminal contract for the 1988-89 school year. The plaintiff then requested a probationary contract. A meeting of the LLF was held, at which the dean and the plaintiff spoke, and the plaintiff answered questions raised by some members of the LLF. The plaintiff's request for a probationary contract was denied.
 
 
 5
 The plaintiff then requested reconsideration, and a meeting was set for November, 1988. Plaintiff attended the meeting, after receiving a letter from the dean explaining the subjects that would be discussed. The LLF decided to uphold its original decision.[1] The plaintiff then brought this law suit. The description of the parties within the complaint includes the defendants' names and positions at the University.
 
 
 6
 The District Court held that this suit is barred by the eleventh amendment, and therefore dismissed it. Because the eleventh amendment protection only reaches suits brought directly against a state or against state officials in their official capacity, the first issue before this Court is whether the District Court properly held that the plaintiff sued the defendants in their official capacities.
 
 
 7
 This Court held in Wells v. Brown, 891 F.2d 591 (6th Cir.1989), that in order to establish federal jurisdiction, the plaintiff is required to make clear in the complaint whether she "seeks to recover damages from defendants directly, or to hold the state responsible for the conduct of its employees." Id. at 593. The individual defendants must be put on notice by the complaint that they might be held personally liable if the plaintiff is successful in his suit. In Wells, the complaint named the defendants, and described the position each held with the state. The complaint was held to be one against the defendants in their official capacity, and therefore, against the state.
 
 
 8
 The complaint in this case listed the defendants by name and position, suggesting that the defendants were being sued in their official capacities. The University itself was not named as a party. Although the pendent state claims of breach of contract state that the defendants are sued "in their individual and administrative capacities," no mention of individual capacity is made in the federal counts, and defendants are referred to by their official capacities throughout the complaint. It would seem, therefore, that the plaintiff was not suing the defendants individually, except for breach of state law. The plaintiff did not clearly notify the defendants that they could be personally liable for those counts brought under federal law. According to this Court's holding in Wells, therefore, the federal suit brought by the plaintiff is one against the defendants' offices and thereby, against the University.
 
 
 9
 Having concluded that the University is the true defendant in this case, the next issue this Court must address is whether the University is an arm of the state, and shielded from suit, or a separate political subdivision and, therefore, a "person" entitled to be sued under 42 U.S.C. Sec. 1983. The plaintiff argues that the issue is conclusively decided by Ohio statute, which describes a state university as a "public institution of higher education which is a body corporate and politic." See Ohio Rev.Code Ann. Sec. 3345.011. Ohio law states that the definition of state excludes political subdivisions, and defines political subdivisions as body politic and corporate. See Ohio Rev.Code Ann. Sec. 2743.01. The plaintiff argues, therefore, that under Ohio law, state universities are political subdivisions, not arms of the state, and are therefore subject to suit.
 
 
 10
 "The question of [a university's or college's] status for purposes of the Eleventh Amendment is, of course, a matter of federal, not state, law, but Ohio decisions and laws shedding light on the relationship of the school to the state government are important, and potentially controlling." Hall v. Medical College of Ohio at Toledo, 742 F.2d 299, 304 (6th Cir.1984), cert. denied, 469 U.S. 1113 (1985). Despite the wording of Ohio Rev.Code Ann. Sec. 3345.011, this Court held in Hall that Medical College of Ohio at Toledo was an arm of the state, as were other Ohio state colleges and universities. In coming to that conclusion, the Court used the third circuit's analysis in Blake v. Kline, 612 F.2d 718 (3d Cir.1979), cert. denied, 447 U.S. 921 (1980). Although under the Blake analysis, state law is a factor, it is not the end of the inquiry. In addition to considering local law and definitions, Blake considered the following factors to determine whether a state university is an arm of the state:
 
 
 11
 whether, in the event plaintiff prevails, the payment of the judgment will have to be made out of the state treasury; ... whether the agency has the funds or the power to satisfy the judgment.... [W]hether the agency is performing a governmental or proprietary function; whether it has been separately incorporated; the degree of autonomy over its operations; whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation, and whether the sovereign has immunized itself from responsibility for the agency's operations.
 
 
 12
 Blake, 612 F.2d at 722 (quoting Urbano v. Board of Managers of New Jersey State Prison, 415 F.2d 247, 251 (3d Cir.1969), cert. denied, 397 U.S. 948 (1970)).
 
 
 13
 The Court in Hall points out that all of the state colleges and universities in Ohio are created by similar statutes, and are governed by one general statute. See Ohio Rev.Code Ann. Secs. 3345.01-.09. The statute which created the University of Akron is virtually identical to that involved in Hall. Compare Ohio Rev.Code Ann. Secs. 3359.01-.05 and Secs. 3350.01-.05. By examining the way in which the medical college is governed under these statutes, Hall concluded that the medical college was immune from suit in federal court. Hall also concluded that the immunity applied to other state colleges and universities.
 
 
 14
 Taking into account the status of state colleges and universities (including the Medical College of Ohio) under Ohio's law of sovereign immunity and the Court of Claims Act, as well as the sources of revenue available to MCO, its performance of a governmental function, its non-corporate nature, and the fiscal and academic restraints imposed upon the school by state law, this Court must conclude that the District Court did not err in finding that MCO lacks operational autonomy from, and is financially dependent on, the State of Ohio, and is consequently an arm of the state entitled to immunity in federal court.
 
 
 15
 Hall, 742 F.2d at 307.
 
 
 16
 The question of immunity for the state universities of Ohio, therefore, has already been decided in this Court. Under Ohio state law, universities, as part of the state of Ohio, not political subdivisions, can only be sued in the court of claims. See Collins v. University of Cincinnati, 3 Ohio App.3d 183 (1981). The University of Akron, like the Medical College at Toledo, relies on state funds, and although the University can raise funds in other ways, such as through tuition, it does not have the power to tax and all funds raised by the University are exempt from taxation. Although the University has the power to contract, it is governed by a board of trustees who are appointed by the governor. See Ohio Rev.Code Ann. Secs. 3345.17, 3360.04, and Sec. 3359.01.
 
 
 17
 This Court concludes, therefore, that in the eleventh amendment context, there are no features that distinguish the University of Akron from the Medical College of Ohio at Toledo, and that, therefore, the holding in Hall controls. The University of Akron is immune from suit in federal court.
 
 
 18
 A section of the District Court's opinion is titled Findings of Fact. The District Court, however, heard no evidence and was actually only setting out a summary of facts which appeared to be uncontroverted in the record before it, which was limited to the correspondence in the University's files, the record of the hearings, and various University policies and procedures. In view of the District Court's disposition of the claims on eleventh amendment grounds, the District Court was without jurisdiction to make the alternative ruling on the merits.
 
 
 19
 The District Court's dismissal of this suit for lack of jurisdiction is AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior Judge, United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The plaintiff has appealed the LLF's decision to the University's Faculty Rights and Responsibility Committee but that proceeding is being held in abeyance until the current litigation is concluded